UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>COUDERT BROTHERS LLP,<br><br>          Debtor. | Bankruptcy Court<br>Case No. 06-12226 (RDD) |
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>          Plaintiff,<br>v.<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP,<br><br>          Defendant. | Bankruptcy Court<br>Adv. Pro. No. 08-1490 (RDD) |
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>          Plaintiff,<br>v.<br><br>ARENT FOX LLP,<br><br>          Defendant. | Bankruptcy Court<br>Adv. Pro. No. 08-1491 (RDD) |
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>          Plaintiff,<br>v.<br><br>DORSEY & WHITNEY LLP,<br><br>          Defendant. | Bankruptcy Court<br>Adv. Pro. No. 08-1492 (RDD) |

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>               Plaintiff,<br><br>v.<br><br>DUANE MORRIS LLP,<br><br><br>               Defendant. | Bankruptcy Court<br>Adv. Pro. No. 08-1493 (RDD) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>               Plaintiff,<br><br>v.<br><br>JONES DAY,<br><br><br>               Defendant. | Bankruptcy Court<br>Adv. Pro. No. 08-1494 (RDD) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>               Plaintiff,<br><br>v.<br><br>JONES DAY and SCOTT JONES,<br><br><br>               Defendants. | Bankruptcy Court<br>Adv. Pro. No. 08-1446 (RDD) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>               Plaintiff,<br><br>v.<br><br>JONES DAY and GEOFFROY DE FOESTRAETS,<br><br><br>               Defendants. | Bankruptcy Court<br>Adv. Pro. No. 08-1433 |

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> JONES DAY and JINGZHOU TAO, <br><br> Defendants. | Bankruptcy Court <br> Adv. Pro. No. 08-1486 (RDD) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> K&L GATES LLP, <br><br> Defendant. | Bankruptcy Court <br> Adv. Pro. No. 08-1495 (RDD) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> MORRISON & FOERSTER LLP, <br><br> Defendant. | Bankruptcy Court <br> Adv. Pro. No. 08-1496 (RDD) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br> Plaintiff, <br> v. <br><br> SHEPPARD MULLIN RICHTER & HAMPTON LLP, <br><br> Defendant. | Bankruptcy Court <br> Adv. Pro. No. 08-1500 (RDD) |

DEVELOPMENT SPECIALISTS, INC.,
in its capacity as Plan Administrator for
Coudert Brothers LLP,

                Plaintiff,

v.

DLA PIPER (US) LLP,

                Defendant.

Bankruptcy Court
Adv. Pro. No. 09-1148 (RDD)

DEVELOPMENT SPECIALISTS, INC.,
in its capacity as Plan Administrator for
Coudert Brothers LLP,

                Plaintiff,

v.

DECHERT LLP,

                Defendant.

Bankruptcy Court
Adv. Pro. No. 09-1149 (RDD)

## JOINT MEMORANDUM OF LAW IN SUPPORT
## OF LAW FIRM DEFENDANTS' MOTION TO
## <u>WITHDRAW REFERENCE AND FOR ABSTENTION</u>

Dated: New York, New York
       August 24, 2011

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 5

      A.     The Coudert Bankruptcy ...........................................................................5

      B.     DSI's Claims ...............................................................................................5

      C.     Proceedings in the Bankruptcy Court .......................................................6

      D.     *Stern v. Marshall* ....................................................................................9

ARGUMENT .............................................................................................................. 10

I.      THE COURT SHOULD WITHDRAW THE REFERENCE FROM THE
      BANKRUPTCY COURT ................................................................................ 10

      A.     The Actions Are Non-Core Proceedings and Cannot Be Decided by the
            Bankruptcy Court .....................................................................................10

            1.     The Profits Claims Are State Law Claims ................................11

            2.     The Fraudulent Conveyance Claims Are State Law Claims ....................12

      B.     Withdrawal Promotes Judicial Economy and Prevents Additional Delay
            and Cost .....................................................................................................13

      C.     Withdrawal Will Not Interfere with the Uniform Administration of the
            Bankruptcy Case .......................................................................................15

      D.     Withdrawal Would Not Result in Forum Shopping ..............................15

II.     THE COURT SHOULD ABSTAIN TO ALLOW NEW YORK COURTS TO
     ADDRESS DSI'S UNPRECDENTED STATE LAW CLAIMS ..................... 17

III.    IN THE ALTERNATIVE TO ABSTENTION, THE COURT SHOULD REVIEW *DE NOVO* THE BANKRUPTCY COURT'S  CONCLUSIONS OF LAW IN ITS DENIAL OF THE MOTIONS TO DISMISS ................................................................... 21

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Burke v. Clifton, Budd & DeMaria,
    Index No. 1454/91-003 (Sup. Ct. New York Co. July 27, 1992) ............................................ 7

C.T. Carden v. Arkoma Assocs.,
    494 U.S. 185 (1990) ....................................................................................................... 19

Clay v. United States,
    537 U.S. 522 (2003) ....................................................................................................... 22

Cohen v. Lord, Day & Lord,
    75 N.Y.2d 95 (1989) ......................................................................................................... 7

Granfinanciera, S.A. v. Nordberg,
    492 U.S. 33 (1989) ................................................................................................. 9, 11, 12

In re 114 Tenth Ave. Ass'n, Inc.,
    427 B.R. 283 (Bankr. S.D.N.Y. 2010) ............................................................................. 17

In re Adelphia Commc'ns Corp.,
    371 B.R. 660 (S.D.N.Y. 2007) ....................................................................................... 24

In re Bally Total Fitness of Greater N.Y., Inc.,
    No. 09-01350, 2011 WL 2118277 (Bankr. S.D.N.Y. May 24, 2011) ....................... 17, 19, 20

In re BearingPoint, Inc.,
    No. 09–10691, 2011 WL 2709295 (Bankr. S.D.N.Y. July 11, 2011) ................................... 14

In re CIS Corp.,
    172 B.R. 748 (S.D.N.Y. 1994) ....................................................................................... 12

In re CPW Acquisition Corp.,
    No. 08-14623 (AJG), 2011 WL 830556 (Bankr. S.D.N.Y. Mar. 3, 2011) ............... 17, 18, 20

In re Elmasri,
    369 B.R. 96 (Bankr. E.D.N.Y. 2007) ............................................................................... 17

In re Gen. Media, Inc.,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) ............................................................................... 12

In re Joseph DelGreco & Co.,
    No. 10 Civ. 6422, 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) ................................... 14, 15

In re Kentile Floors, Inc.,
    No. 94-8518A, 1995 WL 479512 (S.D.N.Y. Aug. 10, 1995) ............................................. 10

In re Lion Capital Group,
    48 B.R. 850 (S.D.N.Y. 1985) ......................................................................................... 21

**Page**

*In re Lyondell Chem. Co.*,
   402 B.R. 596 (Bankr. S.D.N.Y. 2009) ................................................................. 18

*In re N.Y. City Off-Track Betting Corp.*,
   434 B.R. 131 (Bankr. S.D.N.Y. 2010) ................................................................. 18

*In re Nw. Airlines Corp.*,
   384 B.R. 51 (S.D.N.Y. 2008) ...................................................................... 10, 11

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993) ................................................................... passim

*In re Palm Coast, Matanza Shores Ltd. P'ship*,
   101 F.3d 253 (2d Cir. 1996) ............................................................................. 23

*In re Prestige Limited Partnership-Concord*,
   234 F.3d 1108 (9th Cir. 2000) ......................................................................... 24

*In re Taub*,
   413 B.R. 81 (Bankr. E.D.N.Y. 2009) ............................................................... 20

*In re The VWE Group, Inc.*,
   359 B.R. 441 (S.D.N.Y. 2007) ........................................................ 13, 14, 15, 16

*In re Verrazano Holding Corp.*,
   86 B.R. 755 (Bankr. E.D.N.Y. 1988) ............................................................... 18

*In re Wider*,
   No. 09-08313, 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 3, 2009) .................... 18

*In re Yukon Energy Corp.*,
   138 F.3d 1254 (8th Cir. 1998) ......................................................................... 23

*M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*,
   No. 08 Civ. 1982, 2008 WL 2596322 (S.D.N.Y. June 26, 2008) .................... 13, 15

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ....................................................................................... 9, 12

*Santalucia v. Sebright Transportation, Inc.*,
   232 F.3d 293 (2d Cir. 2000) ........................................................................... 7, 16

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 11 Civ. 0913, 2011 WL 2119720 (S.D.N.Y. May 23, 2011) ........................ 10

*Solutia Inc. v. FMC Corp.*,
   No. 04 Civ. 2842(WHP), 2004 WL 1661115, (S.D.N.Y. July 27, 2004) ........ 14, 15

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ........................................................................................ 22

*Stern v. Marshall*,
   564 U.S. ---, 131 S. Ct. 2594 (June 23, 2011) .......................................... passim

iv

**Page**

**Statutes**

11 U.S.C. § 542 ................................................................................................. 6, 12

11 U.S.C. § 548 ..................................................................................................... 6

28 U.S.C. § 1334 ................................................................................... 1, 2, 17, 20

28 U.S.C. § 151 ................................................................................................... 19

28 U.S.C. § 157 ............................................................................................. passim

28 U.S.C. § 158 ............................................................................................. 21, 22

28 U.S.C. § 636 ................................................................................................... 23

28 U.S.C. §1334 .................................................................................................. 19

New York Debtor and Creditor Law § 273 ........................................................... 6

New York Debtor and Creditor Law § 274 ........................................................... 6

New York Debtor and Creditor Law § 275 ........................................................... 6

New York Debtor and Creditor Law § 277 ........................................................... 6

New York Debtor and Creditor Law § 278 ........................................................... 6

New York Partnership Law § 40 ..................................................................... 6, 11

New York Partnership Law § 43 ..................................................................... 6, 11

**Rules**

Federal Rule of Bankruptcy Procedure 541 ......................................................... 6

Federal Rule of Bankruptcy Procedure 5011 ....................................................... 1

Federal Rule of Bankruptcy Procedure 9033(b) ................................................... 1

These thirteen adversary proceedings (each, an "Action" and collectively, the "Actions") are related to the bankruptcy of Coudert Brothers LLP ("Coudert"), an international law firm.  In light of the Supreme Court's recent decision in *Stern v. Marshall*, 564 U.S. ---, 131 S. Ct. 2594 (June 23, 2011), defendants, by their attorneys, respectfully submit this joint memorandum of law in support of their motions: (1) for withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (2) for abstention pursuant to 28 U.S.C. § 1334(c)(1); or (3) in the alternative to abstention, for an order converting the Bankruptcy Court's conclusions of law on a dispositive issue central to these Actions to proposed conclusions pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033(b).

## PRELIMINARY STATEMENT

In the Actions, the Plan Administrator for Coudert, Development Specialists Inc. ("DSI"), asserts only *state law* causes of action against defendant law firms (each, a "Law Firm Defendant" and collectively, the "Law Firm Defendants")[1] that one or more former Coudert partners joined.  DSI commenced the Actions in the Bankruptcy Court, and alleged that they are "core" proceedings under 28 U.S.C. § 157(b), which would give the Bankruptcy Court statutory authority to issue final determinations of law and fact.  However, regardless of whether the Actions are "core" under § 157(b), the Supreme Court's decision in *Stern* conclusively establishes that the Bankruptcy Court lacks the constitutional authority to render final determinations in the Actions.

---

[1] The Law Firm Defendants are: (1) Akin Gump Strauss Hauer & Feld LLP; (2) Arent Fox LLP; (3) Dorsey & Whitney LLP; (4) Duane Morris LLP; (5) Jones Day; (6) K&L Gates LLP; (7) Morrison & Foerster LLP; (8) Sheppard Mullin Richter & Hampton LLP; (9) DLA Piper LLP (US), and (10) Dechert LLP.

*Stern* holds that Bankruptcy Courts may not finally determine a "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim."[2] 131 S. Ct. at 2611.  The cause of action at issue in *Stern*, like the causes of action here, was not a matter of "public right" (*id.* at 2612-2615) and therefore could not be decided outside of the judicial branch under Article III of the Constitution.  Thus, to the extent that 28 U.S.C. § 157(b) authorizes Bankruptcy Courts to "determine" such private, state law causes of action as "core" proceedings, it violates Article III.  *Id.* at 2620.

DSI's causes of action against the Law Firm Defendants are precisely the types of claims that *Stern* holds the Bankruptcy Court may not finally determine.  The Bankruptcy Court lacks constitutional authority to determine the Actions, irrespective of whether the Actions are designated as "core" proceedings under § 157(b).[3]  *Stern*, 131 S. Ct. at 2608.  Accordingly, the Law Firm Defendants move to withdraw the reference to the Bankruptcy Court.  In addition, because DSI's claims involve *novel* issues of state law that state courts should decide, the Law Firm Defendants move for abstention pursuant to 28 U.S.C. § 1334(c)(1).

Withdrawal of the reference and abstention are particularly necessary here because DSI seeks to expand New York law in a way that no New York state or federal decision supports.  DSI alleges that former Coudert partners brought former Coudert hourly-rate legal matters with them to the Law Firm Defendants, and that Coudert is therefore entitled to all future

---

[2] Only one Law Firm Defendant, Dechert LLP ("Dechert"), filed a proof of claim in the bankruptcy. Dechert's proof of claim will not resolve DSI's causes of action against Dechert.  In this brief, "claim" is used to mean "cause of action," and "proof of claim" will be used when intended.

[3] None of the Law Firm Defendants have expressly consented to determination of the Actions by the Bankruptcy Court.  In addition, none of them could be found to have impliedly consented.  None admitted DSI's allegation that these Actions are "core."  Most asserted a right to a jury trial or to arbitration, and there has been little activity in these Actions to date.

"profits" from the work of its former partners on such matters *after* they joined the Law Firm Defendants (the "Profits Claims").

This would be an extraordinary deviation from New York law and policy on the freedom of client and attorney movement.  New York law is clear that clients and legal representations are not the "property" of a law firm, and a law firm may not restrict a partner from continuing to work on a client matter after moving to a new law firm (by means of a covenant not to compete, for example), if the client chooses to follow the partner.

A law firm is entitled to be compensated *only* for its own work (*i.e.*, the work of its own attorneys) on a legal matter.  In contingency fee cases, for example, it is well-established that a law firm that has been replaced by a client without receiving compensation for the services it performed has a right to receive compensation for the value of such services, either by opting for *quantum meruit* compensation, or by seeking a share of any eventual settlement or judgment obtained by the new law firm.  It is also clear that the share to which the initial law firm is entitled must be based *only* on the value of its own work prior to the change in law firms, and that it has no right to share in the value added or profits earned by the new law firm.  This is true even when the change in law firms occurred because a partner left one law firm to join another. The result is also the same if the change occurred because of the dissolution of the initial law firm: the dissolving law firm retains a right to be compensated for the value of its *pre-dissolution* services in the contingency fee matter, not to all "profits" on the work performed by the dissolved firm's former partners at their new law firms.

DSI's Profits Claims are not based on former Coudert contingency fee matters. Instead, they are based on former Coudert *hourly-rate* matters for which Coudert was already compensated for services it performed (at its hourly rates).  Nonetheless, DSI asserts the novel

claim that Coudert is entitled to recover all profits from the work of its former partners on such matters *after* they left Coudert.  Effectively, DSI claims that former Coudert partners continue to work for Coudert on any hourly-rate matters that moved with them after they joined the Law Firm Defendants.

The Bankruptcy Court itself recognized DSI's Profits Claims were novel, stating "if [the Bankruptcy Court] had the power, this would be a case for certification to the New York Court of Appeals."  *See* Declaration of Claire L. Huene ("Huene Decl."), dated August 23, 2011, Exhibit C (transcript of Modified Bench Ruling on Motions to Dismiss, dated August 7, 2009 ("Tr.")), at 34-35.  The Bankruptcy Court nonetheless created New York law by deciding this issue of novel state law in DSI's favor when it denied the Law Firm Defendants' motions to dismiss.  This ruling on a novel matter of state law is precisely the type of conclusion of law that, under *Stern*, may not constitutionally be made by the Bankruptcy Court, a non-Article III court.

DSI also asserts additional claims against Dechert LLP ("Dechert"), which entered into a contract to purchase assets from Coudert.  DSI challenges the asset purchase as a fraudulent conveyance.  These claims are also state law claims, as *Stern* makes clear.  They are not matters of public right, nor would they necessarily be resolvable in the course of ruling on a proof of claim.  The Bankruptcy Court lacks constitutional authority to determine any of the claims in the Actions.

All of the elements for withdrawal of the reference (*see* Point I *infra* ) and abstention (*see* Point II *infra*) are met here.  Judicial economy dictates that the Actions should not remain in the Bankruptcy Court, which lacks authority to determine them, but should proceed in a court which has such authority – either this Court or a New York state court.  Because the Actions involve novel issues of state law, this Court should abstain in favor of state court.

In the alternative to withdrawing the reference, this Court should treat the Bankruptcy Court's conclusions of law in its order denying the Law Firm Defendants' motions to dismiss as *proposed* conclusions of law pursuant to 28 U.S.C. § 157(c)(1), allow the Law Firm Defendants to object to them pursuant to Bankruptcy Rule 9033(b), and review them *de novo*. The Bankruptcy Court's ruling on a dispositive issue of state law is unconstitutional under *Stern*, and therefore at most can have the effect of a proposed conclusion of law, subject to *de novo* review by this Court.  *See* Point III, *infra*.

## STATEMENT OF FACTS

### A.    The Coudert Bankruptcy

Coudert was a limited liability partnership organized under New York law, headquartered in New York, New York and engaged in the practice of law.  *See*, *e.g.*, Complaint against Akin Gump Strauss Hauer & Feld LLP (the "Akin Gump Complaint") at ¶¶ 14-15.  A copy of the Akin Gump Complaint is attached to the Huene Decl. as Exhibit A.

On September 22, 2006, Coudert filed a voluntary petition for bankruptcy under chapter 11 of title 11 to the United States Code.  *Id.* ¶ 2.  Coudert's chapter 11 plan of liquidation was confirmed on August 27, 2008, and plaintiff DSI was appointed Plan Administrator.  *Id.* at ¶¶ 3-4.

### B.    DSI's Claims

Beginning in September 2008, DSI filed complaints against the Law Firm Defendants.  The Akin Gump Complaint (Huene Decl. Ex. A) is representative of DSI's complaints against the other Law Firm Defendants, with the exception of Dechert (*see infra* at 6).

DSI alleges the Profits Claims variously as claims for unjust enrichment, conversion, "recovery of property," an accounting under Sections 40 and 43 of the New York Partnership Law and Section 542 of the Bankruptcy Code, and turnover of profits under Sections 541 and 542 of the Bankruptcy Code.  *Id.* at ¶¶ 19-36.  These claims are all based on the so-called "unfinished business doctrine," which, as applied in New York, is no more than the right of a dissolving law firm to be compensated for the value of its *pre-dissolution* work on pending *contingency fee* matters that move to different firms.  DSI seeks to extend this limited body of law to Coudert's hourly-rate matters pending at the time of dissolution, and to recover compensation for post-dissolution hourly work performed by its former partners at their new firms, the Law Firm Defendants.

DSI also asserts claims against Dechert LLP ("Dechert") for fraudulent conveyance under Sections 273, 274, 275, 277, and 278 of New York Debtor and Creditor Law and Section 548 of the Bankruptcy Code based on an asset purchase agreement that Dechert entered into with Coudert.  *See* Complaint against Dechert (the "Dechert Complaint") ¶¶ 28, 33. A copy of the Dechert Complaint is attached to the Huene Decl. as Exhibit B.  Under clear Supreme Court precedent, these claims are also all state law claims.  *See* Point I(A)(2) *infra*.

**C.**     **Proceedings in the Bankruptcy Court**

Because the Actions relate to the Coudert bankruptcy case, they were automatically referred to the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.), which provides:

> Pursuant to Section 157(a) of the Bankruptcy Amendments
> and Federal Judgeship Act of 1984, any or all cases under title 11

> and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district.

The Law Firm Defendants moved to dismiss the complaints, arguing, *inter alia*, that there was no New York authority supporting DSI's Profits Claims, that the Profits Claims were contrary to the rationale of the contingency fee cases (*see*, *e.g.*, *Santalucia v. Sebright Transportation, Inc.*, 232 F.3d 293 (2d Cir. 2000) (dissolving law firm is entitled to be compensated for value it added to pending contingency fee matter *prior* to dissolution only)), and that the Profits Claims violate other well-established principles of New York law on the freedom of attorney and client movement.  *See*, *e.g.*, *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 98 (1989) (it impermissibly interferes with a client's choice of counsel for a law firm to restrict an attorney's right to continue to represent clients at a new firm); *Burke v. Clifton, Budd & DeMaria*, Index No. 1454/91-003 (Sup. Ct. New York Co. July 27, 1992) (dismissing claims based on active client matters transferred from a departing lawyer to his new firm, because "none of the active client matters are alleged to be contingent fee cases," and there was no allegation that the former law firm was not compensated for hours performed on hourly rate matters prior to the transfer to the new law firm).  A copy of the unpublished *Burke* decision is attached to the Huene Decl. as Exhibit D.

In January 2010, the Bankruptcy Court denied the Law Firm Defendants' motions to dismiss the complaints.  *See* Huene Decl. ¶ 8 & Ex. A.  The Bankruptcy Court acknowledged that the Profits Claims were novel under New York state law and stated that "this would be a case for certification to the New York Court of Appeals" if the Bankruptcy Court had the power to do so.  Tr. 34-35.  Because of the lack of precedent for DSI's argument, the Bankruptcy Court undertook to "predict how the highest court of New York would resolve such uncertainty and

ambiguity." *Id.* at 34.  The Bankruptcy Court concluded that "to the extent DSI is seeking to assert claims based on the unfinished business doctrine with respect to hourly fee matters . . . it may do so." *Id.* at 38.

The Law Firm Defendants moved for leave to appeal.  *See In re Coudert Brothers LLP Law Firm Adversary Proceedings*, No. 10 Civ. 9334 (VM) (S.D.N.Y. 2010).  The District Court acknowledged that the "New York Court of Appeals has not addressed the unfinished business doctrine," that it could "find no New York decision that address the distinction" between hourly-rate matters and contingency fee matters, and that "the application of the unfinished business doctrine to hourly fee matters is a matter of first impression in New York." Docket Entry No. 33, at 6, 11.  The District Court nonetheless denied the Law Firm Defendants' motion for leave to appeal on March 22, 2011, based in part on the fact that two other Bankruptcy Courts from non-New York judicial districts had found that it applied to hourly-rate matters under other states' law (in neither case was there appellate review), and one District of Columbia decision.  *Id.* at 11.  Thus, there is paltry authority nationwide to support DSI's asserted causes of action, and none at all in New York.

There has been no activity in the Actions other than the Law Firm Defendants' motion to dismiss.  The Actions remain in the earliest stages of discovery.  The parties have not yet exchanged Rule 26 initial disclosures, nor had a Rule 16 conference, nor produced documents, nor conducted depositions.[4]

---

[4] In a few of the Actions, the parties informally provided some documents for purposes of settlement discussions.

**D.**     <u>*Stern v. Marshall*</u>

On June 23, 2011, the Supreme Court decided *Stern v. Marshall*.  In *Stern*, the Supreme Court considered a state law counterclaim for tortious interference asserted by the bankruptcy estate against a person who had filed a proof of claim in the bankruptcy, a "core" proceeding under § 157(a)(2)(C).  The Supreme Court held that because the estate's counterclaim "was one at common law that simply attempts to augment the bankruptcy estate," it was a matter of private right, not "public right," and therefore could not be determined outside of Article III courts.[5]  131 S. Ct. at 2616 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)).  Accordingly, the Supreme Court held that the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim," even though such a counterclaim was a "'core proceeding' under the plain text of § 157(b)(2)(C)."  *Id.* at 2604, 2620.

---

[5] A "public right" is a statutory right that "derives from a federal regulatory scheme" or that is "closely intertwined with a federal regulatory program."  *Stern*, 131 S. Ct. at 2613.  A state law cause of action which is asserted to "augment the estate" does not constitute a public right.  *Id.* at 2616.  DSI's state law causes of action against the Law Firm Defendants merely seek to augment the estate and are precisely the type of claims that *Stern* holds do *not* involve public rights.

# ARGUMENT

## I.

## THE COURT SHOULD WITHDRAW THE
## REFERENCE FROM THE BANKRUPTCY COURT

A district court "may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . on timely[6] motion of any party, for cause shown." 28 U.S.C. § 157(d). In deciding whether to withdraw a reference, the Second Circuit holds that a court should consider: [1] whether the action is non-core, [2] "efficient use of judicial resources, [3] delay and costs to the parties, [4] uniformity of bankruptcy administration, [5] the prevention of forum shopping, and [6] other related factors." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *see also In re Nw. Airlines Corp.*, 384 B.R. 51, 59 (S.D.N.Y. 2008) ("Questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors bear on the determination of whether it is appropriate to withdraw the reference.").

Here, the *Orion* factors mandate withdrawal of the reference.

## A.    The Actions Are Non-Core Proceedings and
## Cannot Be Decided by the Bankruptcy Court

The Second Circuit emphasizes that whether a claim is non-core, and thus cannot be decided by a Bankruptcy Court, is a threshold question, "since it is upon this issue that

---

[6] This motion is timely. After the *Stern* decision, the Law Firm Defendants consulted with DSI's counsel, who indicated for almost three weeks that DSI might consent to withdrawal of the reference in light of *Stern*. Huene Decl. ¶¶ 4-9. On or around July 26, 2011, DSI's counsel informed the Law Firm Defendants that he would not consent after all. *Id.* The Law Firm Defendants thereafter filed this motion. In addition, this motion is timely because the Actions are all in the pre-discovery stage. *See Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 11 Civ. 0913, 2011 WL 2119720, at *8 (S.D.N.Y. May 23, 2011) (holding that motion was timely where it was filed two months after receipt of notice of the grounds for withdrawal of reference); *see also In re Kentile Floors, Inc.*, No. 94-8518A, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) (holding that nine-month delay did not render motion for withdrawal untimely because parties were in mediation during that time).

questions of efficiency and uniformity will turn." *Orion*, 4 F.3d at 1101.  Under *Stern*, DSI's

causes of action must be treated as non-core because the Bankruptcy Court lacks constitutional

authority to determine them.[7]  DSI asserts two types of claims against the Law Firm Defendants:

the Profits Claims and fraudulent conveyance claims.  Both types of claims fall squarely within

the ambit of *Stern*: they are state law claims that merely "seek to augment the estate," and would

not be resolved in the process of ruling on a creditor's proof of claim.

      **1.**        **The Profits Claims Are State Law Claims**

        DSI's claims to recover profits from the Law Firm Defendants are state law

claims that are independent of the Bankruptcy Code.  DSI alleges that such claims are based on

New York Partnership Law §§ 40, 43.  *See*, *e.g.,* Akin Gump Complaint ¶ 21; Dechert Complaint

¶ 45 (Huene Decl. Exs. A-B).  The Bankruptcy Court noted that DSI's claims for future profits

on Coudert's former hourly-rate matters are "governed by New York law" and raised questions

"for certification to the New York Court of Appeals."  Tr. 34-35 (Huene Decl. Ex. C).  Indeed,

the Bankruptcy Court, in deciding the motions to dismiss, could only do so by trying to "predict

how the highest court of New York would resolve" the claims if they had been brought in state

court.  Tr. 34.

        That DSI invokes provisions of the Bankruptcy Code to assert its Profits Claims

as "recovery of property" does not alter the fact that they are state common law claims, and

cannot be withdrawn from Article III Courts.  *See Granfinanciera*, 492 U.S. at 53-54 (ruling that

when a federal statute codifies a common law claim that is not a matter of "public right," such as

fraudulent conveyance claims codified at 11 U.S.C. § 548, it does not alter the requirement for

determination by Article III courts).

---

[7] The majority of courts in the Second Circuit "hold that the district court can determine, in the first instance, whether a proceeding is core or non-core."  *In re Nw. Airlines Corp.*, 384 B.R. at 56.

Nor can DSI disguise the state law nature of its Profits Claims by styling them as claims for "turnover" or "recovery of property."  Courts reject attempts to disguise state law claims as bankruptcy claims by applying such labels.  *See In re Gen. Media, Inc.*, 335 B.R. 66, 76 (Bankr. S.D.N.Y. 2005) ("[T]he plaintiff's invocation of § 542(a) of the Bankruptcy Code does not transform the nature of the claims. . . .  If an ownership dispute must be resolved before any relief can be ordered, the proceeding is a non-core replevin action under state law rather than a § 542(a) turnover proceeding."); *In re CIS Corp.*, 172 B.R. 748, 756 (S.D.N.Y. 1994) ("It follows that regardless of the label one chooses to attach to them, in substance and spirit the Trustee's action is fundamentally an action to determine disputed *ownership* in property.  Such an action arises under state law, and is independent and outside the reach of the bankruptcy process." (citations omitted)).

Thus, DSI's Profits Claims are state law claims that must be treated as non-core under *Stern*.

## 2.    The Fraudulent Conveyance Claims Are State Law Claims

DSI asserts claims against Dechert for fraudulent conveyance seeking to invalidate the asset purchase agreement between Coudert and Dechert.  *See* Huene Decl. Ex. B ¶¶ 25-42.  Those claims are based on state law.

The Supreme Court has repeatedly held that such "fraudulent conveyance suits [are] 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'"  *Stern*, 131 S. Ct. 2594, 2614 (2011) (quoting *Granfinanciera,* 492 U.S. at 56).  *See also Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 548 U.S. 50, 84 (1982).

Thus, as with the Profits Claims, the Bankruptcy Court lacks constitutional authority to determine the fraudulent conveyance claims, rendering the entirety of the Actions non-core.

**B.      Withdrawal Promotes Judicial Economy and Prevents Additional Delay and Cost**

The *Orion* factors of judicial efficiency and lack of additional delay and cost favor withdrawal of the reference.  Withdrawal would not impose delay or cost on the parties, and will instead save both the parties' and judicial resources.

None of the Law Firm Defendants has consented to resolution by the Bankruptcy Court.  Therefore, each of these non-core Actions will likely be transferred to another forum for ultimate resolution.  *See Orion*, 4 F.3d at 1101 ("[T]he constitution prohibits bankruptcy courts from holding jury trials in non-core matters.").  The burden on the parties and the courts in having to proceed before the Bankruptcy Court, which may not constitutionally make findings of fact or conclusions of law, only to be forced to familiarize a different court or decision-maker with the issues and facts at a later date, is sufficient to justify withdrawing the reference.  *See M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, No. 08 Civ. 1982, 2008 WL 2596322, at *3 (S.D.N.Y. June 26, 2008) ("[A]bsent additional considerations, withdrawing the reference is efficient because if the case goes to trial, the trial would have to be conducted in district court."); *In re The VWE Group, Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007) ("Under *Orion,* the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference.").

Even if the Bankruptcy Court decided the Actions without a jury, its decisions would be subject to *de novo* review.  *See* Point I.A, *supra*.  Such duplicative review would unnecessarily waste the parties' and the courts' resources when the Actions could be litigated

and tried in a single court. As the Second Circuit has held, "unnecessary costs could be avoided by a single proceeding in the district court" if a bankruptcy court's decision "is subject to *de novo* review by the district court." *Orion*, 4 F.3d at 1101; *see In re BearingPoint, Inc.*, No. 09–10691, 2011 WL 2709295, at *8 (Bankr. S.D.N.Y. July 11, 2011) (possibility that parties could contend bankruptcy court could "only make proposed Findings of Fact and Conclusions of Law to the district court, with a de novo review process thereafter to follow. . . . would result in material additional expense and delay," and therefore Court would abstain from hearing proceeding in favor of State Court); *VWE Group*, 359 B.R. at 451 ("Since the Bankruptcy Court's determination of this non-core claim would be subject to *de novo* review in the district court, unnecessary costs can be avoided by a single proceeding in this court"); *Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842, 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) ("By litigating this non-core matter in the district court, judicial resources will be conserved instead of having two courts administer two rounds of briefing and argument on the same issues.").

In addition, because the Actions are in the earliest stages of discovery, withdrawal will not delay pending discovery and the Bankruptcy Court is not particularly familiar with the facts. *See In re Joseph DelGreco & Co.*, No. 10 Civ. 6422, 2011 WL 350281, at *5 (S.D.N.Y. Jan. 26, 2011) (holding that judicial economy supported withdrawal because non-core state law claim "must ultimately be tried by [the District] Court or by a state trial court" and "plaintiffs do not assert, credibly or otherwise, that the bankruptcy court is particularly familiar with the facts that underlie the legal malpractice claims or better equipped to handle any pre-trial proceedings").[8]

---

[8] The Actions have been pending for several years without any activity beyond the Law Firm Defendants' motion to dismiss. It cannot be said that withdrawal could cause additional delay. To the contrary, proceeding in this Court or in state court is likely to result in less delay, not more.

**C.      Withdrawal Will Not Interfere with the**
**        Uniform Administration of the Bankruptcy Case**

Litigating DSI's claims in a court that will ultimately try the Actions will not interfere with the uniform administration of the bankruptcy case.  To the contrary, Coudert's Plan has already been confirmed.  The Actions seek solely to augment the estate, not to re-order priorities among creditors.  In addition, DSI's state law claims "do not raise substantive issues of bankruptcy law."  *Joseph DelGreco & Co.*, 2011 WL 350281, at *5; *see also M. Fabrikant,* 2008 WL 2596322, at *4 (S.D.N.Y. June 26, 2008) ("Withdrawing the reference would not hamper uniform administration of the bankruptcy code because this case is a 'non-core' proceeding. . . . concern[ing] a contract dispute under New York law."); *Solutia*, 2004 WL 1661115, at *4 ("Where an action involves garden variety breach of contract matters that are non-core, uniformity in bankruptcy law compels withdrawal of those claims." (internal quotation marks omitted)); *VWE Group*, 359 B.R. at 451 ("Nor will withdrawal of the reference adversely affect the uniformity of bankruptcy administration because the Committee's non-core professional malpractice claim (a) is not brought under bankruptcy law; (b) arose prior to and independent of the Debtor's bankruptcy filing; and (c) does not otherwise concern administration of the bankruptcy estate.").

**D.      Withdrawal Would Not Result in Forum Shopping**

Finally, seeking to litigate the Actions before the court that will ultimately decide them is not forum shopping.  Under *Orion*, the Actions must be decided by this Court or a New York state court whether or not the reference is withdrawn.  *See* Point I.B, *supra*.  Thus, withdrawal of the reference will not change the ultimate forum for resolution of DSI's state law claims.  *See Joseph DelGreco & Co.*, 2011 WL 350281, at *5 (holding that "there is no evidence that [movant's] motion is an attempt to engage in forum shopping" because movant "has a right

to a jury trial on the malpractice claims, and absent consent by [movant] to a trial in bankruptcy court, the parties have no choice but to try the case in this Court or in New York state court"); *VWE Group*, 359 B.R. at 451 ("[W]ithdrawing the reference will not result in forum-shopping because, due to defendants' demand for a jury trial on this non-core claim, the parties have no choice but to try the case in this court.").  Instead, withdrawal of the reference would allow the parties to efficiently litigate DSI's state law claims in the forum that will ultimately decide the merits of the Actions.

   In addition, it does not constitute forum shopping that withdrawal of the reference will likely lead to earlier review of the Bankruptcy Court's conclusion of law that DSI's Profits Claims are cognizable under New York law.  This conclusion of law is a dispositive issue, other than with respect to the measure and amount of damages.[9]  Under *Stern*, the Bankruptcy Court *may not constitutionally render that conclusion of law*, a novel issue under state law that goes to the heart of DSI's claims.  The Bankruptcy Court may only issue *proposed* conclusions of law in non-core proceedings (28 U.S.C. § 157(c)(1)).  Seeking prompt review of a dispositive conclusion of law that the Bankruptcy Court may not make is a matter of efficiency, not forum shopping.

   For all these reasons, the Court should withdraw the reference to the Bankruptcy Court.

---

[9] There may be factual disputes about which hourly-rate matters former Coudert partners brought with them to the Law Firm Defendants or other factual issues.  In addition, the parties will dispute how "profits" on a particular former Coudert partner's hours spent on such matters could possibly be calculated, particularly given the Bankruptcy Court's strained attempts to preliminarily formulate a measure of damages that applies the unfinished business doctrine's requirement (in the contingency fee context) that the dissolving law firm is only entitled to compensation for value added *prior* to dissolution. *See, e.g., Santalucia*, 232 F.3d at 298; Tr. 44-49 (Huene Decl. Ex. C).  The unfinished business doctrine's measure of damages – value added pre-dissolution – cannot be applied to hourly-rate cases in which Coudert has already been fully compensated for its pre-dissolution hourly-rate work, and now seeks "profits" on hours worked by its former partners *post-dissolution* at the Law Firm Defendants.

## II.

### THE COURT SHOULD ABSTAIN TO ALLOW NEW YORK COURTS TO ADDRESS DSI'S UNPRECDENTED STATE LAW CLAIMS

A court "may 'in the interest of justice, or in the interest of comity,' abstain from hearing a particular proceeding 'arising in or related to a case under title 11.'"  *In re Bally Total Fitness of Greater N.Y., Inc.*, No. 09-01350, 2011 WL 2118277, at *3 (Bankr. S.D.N.Y. May 24, 2011) (quoting 28 U.S.C. § 1334(c)(1)).  In deciding whether to abstain, courts in the Second Circuit generally consider twelve factors:

> (1) the effect of abstention on the efficient administration of the estate; (2) the extent to which state law issues predominate; (3) the difficult nature of the applicable state law; (4) the presence of a related proceeding commenced in state court; (5) whether there is a basis for federal jurisdiction apart from the debtor's bankruptcy filing; (6) the degree of relatedness of a proceeding to the main bankruptcy case; (7) the substance, rather than form, of the asserted "core" proceeding; (8) the feasibility of severing state law claims; (9) the burden on the court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping; (11) the existence of a right to jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Id.*; *In re CPW Acquisition Corp.*, No. 08-14623, 2011 WL 830556, at *5 (Bankr. S.D.N.Y. Mar. 3, 2011) ("Bankruptcy courts consider one or more (although not necessarily all) of the above twelve factors.").

"Abstention is especially advised where there are unsettled questions of state law."  *In re Elmasri*, 369 B.R. 96, 103 (Bankr. E.D.N.Y. 2007) (internal quotation marks omitted), *aff'd on other grounds*, 374 Fed. App'x 75 (2d Cir. 2010); *see also In re 114 Tenth Ave. Ass'n, Inc.*, 427 B.R. 283, 299 (Bankr. S.D.N.Y. 2010) ) ("This is a particularly appropriate case for abstention. The issues relating to the residential leases are complex and the State courts have great expertise in applying them."), *aff'd on other grounds*, 441 B.R. 416 (S.D.N.Y.

2010; *In re Verrazano Holding Corp.*, 86 B.R. 755, 763 (Bankr. E.D.N.Y. 1988) ("The primary criteria for the exercise of discretionary abstention are whether there exists unsettled questions of state law, or whether the action implicates important state interests or policies." (citations omitted)).

Here, abstention is "especially advised." The Actions involve novel theories of state law that would affect the practice of law in New York. New York courts have the greater interest in resolving the Actions. *See In re N.Y. City Off-Track Betting Corp.*, 434 B.R. 131, 152 (Bankr. S.D.N.Y. 2010) ("The [New York state] Racing and Wagering Board is better able to balance competing New York policy interests, and it has authority to issue regulations and adjudicate disputes regarding the Racing Law. This Court will not usurp the role of the Racing and Wagering Board in balancing these competing interests."); *In re Lyondell Chem. Co.*, 402 B.R. 596, 614 (Bankr. S.D.N.Y. 2009) ("In short, New Jersey's courts—by reason of greater access to the tools of interpretation, greater knowledge of what they want to accomplish, and a greater interest in regulating the area in question—provide the best forum for determining issues of this nature."). Indeed, the Bankruptcy Court itself acknowledged the need for guidance from the state courts. The need to enter uncharted state law territory to resolve DSI's alleged causes of action is alone sufficient basis for abstention. *See In re CPW*, 2011 WL 830556, at *7 ("Because of the difficulty of applying English law, an English Court is better suited to determine whether the fees requested were reasonable."); *In re Wider*, No. 09-08313, 2009 WL 4345411, at *2 (Bankr. E.D.N.Y. Nov. 3, 2009) (abstaining where, *inter alia*, "[t]he underlying liability issues as between Plaintiffs and Debtor in the State Court Actions are matters of New York State substantive law. The fraud alleged against Defendant is common law fraud, and not a creature of the Bankruptcy Code.").

The other applicable factors also support abstention:

*First*, the state courts' resolution of the state law causes of action would not negatively impact the efficient administration of the estate or "amount to abdication of a critical role in the administration of the estate." As noted, the Coudert Plan has been confirmed and implemented. The Actions are merely attempts by DSI to bring more funds into the estate. Financial impact on the size of an estate is not an "administration" issue. *See In re Bally*, 2011 WL 2118277, at *4 ("[T]his factor looks at the effect on *administration* of the bankruptcy estate, and not at the overall effect on the financial condition of the debtor," thus "while the potential loss of a profitable location may have a negative economic effect on [debtor], it will not impact the administration of [debtor's] bankruptcy estate.").

*Second*, state law issues not only predominate, they are the *only* issues. The unfinished business claims are "governed by New York state law," Tr. 34, and the fraudulent conveyance claims are based on contracts governed by state law. *See id.* ("The action will consider equitable relief under a California statute regarding a California lease and will not be governed by any bankruptcy law. Accordingly, this factor also weighs in favor of abstention.").

*Third*, there is no basis for federal jurisdiction over the causes of action apart from Coudert's bankruptcy filing. The claims are not based on questions of federal law, and the parties, who are all citizens of New York, lack diversity. Law firms are citizens of all states in which their partners reside, and all have New York partners. *See C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (citizenship of partnership for federal diversity purposes is citizenship of all of its partners). DSI alleges jurisdiction only under 28 U.S.C. §§ 151, 157 and 1334. *See* Akin Gump Complaint ¶ 10; Dechert Complaint ¶ 10 (Huene Decl. Exs. A-B).

*Fourth*, DSI's causes of action are remote from the core matters of the main bankruptcy case.  The claims do not affect the priority or number of creditors and cannot interfere with the confirmation of a plan because a plan has *already* been confirmed.  *See CPW Acquisition Corp.*, 2011 WL 830556, at *6 ("The Court's abstention would not amount to abdication of any necessary role in the administration of the estate. A plan has already been confirmed and the assets of the estate have already been liquidated pursuant to that plan." (footnote omitted)); *Bally Total Fitness*, 2011 WL 2118277 at *6 ("[T]he fact that the plan could be confirmed without resolving the dispute makes it clear that the issue presented by this dispute is not closely related to [debtor's] bankruptcy case." (internal quotation marks omitted)); *In re Taub*, 413 B.R. 81, 94 (Bankr. E.D.N.Y. 2009) ("As described above, bankruptcy law does not give rise to the Debtor's claims here, and those claims exist outside of this bankruptcy case. . . . And as a consequence, the issues to be determined in this Adversary Proceeding are remote from those to be determined in the Debtor's bankruptcy case.")

*Fifth*, the causes of action involve a distinct set of facts and law, are readily severable from the core bankruptcy matters and "judgment may be entered in state court with enforcement to be carried out in this forum."  *See Bally Total Fitness*, 2011 WL 2118277 at *6.

*Sixth*, abstention from the thirteen adversary proceedings will substantially relieve the burden on the Court's docket.

*Finally*, as shown *supra*, the Law Firm Defendants have the right to a decision-maker other than the Bankruptcy Court in these non-core Actions, and seeking withdrawal and abstention in the Actions is not forum-shopping.  *See* Point I *supra*.

The Court should abstain pursuant to 28 U.S.C. § 1334(c)(1) and remand the Actions to state court.

## III.

## IN THE ALTERNATIVE TO ABSTENTION, THE COURT SHOULD REVIEW *DE NOVO* THE BANKRUPTCY COURT'S CONCLUSIONS OF LAW IN ITS DENIAL OF THE MOTIONS TO DISMISS

If the Court decides not to abstain, the Court should review the Bankruptcy Court's conclusions of law on DSI's Profits Claims *de novo* at this time.  It can do so whether or not it grants the Law Firm Defendants' motion to withdraw the reference to the Bankruptcy Court.

The Bankruptcy Court denied the Law Firm Defendants' motions to dismiss because it concluded that DSI's Profits Claims were cognizable under New York law – but the Bankruptcy Court lacked the authority to render such a conclusion of law.  Instead, pursuant to 28 U.S.C. § 157(c)(1), in a non-core proceeding, a Bankruptcy Court "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy court's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."

The text of this statute has often been interpreted, with little if any analysis,[10] as being the equivalent of an appellate jurisdiction statute, with "final" order meaning the same thing as "final" for appellate jurisdiction purposes, with the result that parties are not able to seek review of a Bankruptcy Court's conclusions of law until the end of the case.  The text does not so read.  Congress knows how to write an appellate jurisdiction statute when that is what is intended.  *See* 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals [in listed enumerated circumstances].").  Treating "final" as used in § 157(c)(1)

---

[10] *See, e.g., In re Lion Capital Group*, 48 B.R. 850, 854 (S.D.N.Y. 1985).

as being the same as "final" in an appellate jurisdiction statute such as § 158, despite the absence of express language used to indicate limited appellate jurisdiction, is contrary to basic principles of statutory interpretation. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (rejecting interpretation of statute that "runs afoul of the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (internal quotation marks omitted)); *Clay v. United States*, 537 U.S. 522, 528 (2003) ("When Congress includes particular language in one section of a statute but omits it in another section of the same Act, we have recognized, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." (internal quotation marks omitted)). There is no basis, in the text of § 157(c)(1), for treating "final" as the equivalent of an appellate jurisdiction statute.

Moreover, the term "final" means different things in different contexts. *See Clay*, 537 U.S. at 527 ("Finality is variously defined; like many legal terms, its precise meaning depends on context"). Section 157(c)(1) serves a very different purpose than an appellate statute such as § 158. Section 157(c)(1) covers the circumstance when the Bankruptcy Court ultimately *lacks constitutional authority* to issue dispositive conclusions of law and findings of fact, and can only issue *proposed* findings and conclusions. This circumstance should require more frequent oversight than appellate review at the end of the case. The prevailing interpretation of § 157(c)(1) as providing for *de novo* review only when the Bankruptcy Court's findings and conclusions are made in a decision that is "final" for appellate purposes allows a Bankruptcy Court – a non-Article III court – to issue conclusive rulings of law in connection with a denial of a dispositive motion (a non-final order for appellate purposes) without *de novo* review by the District Court, forcing the parties to treat the Bankruptcy Court's conclusion of law as effective

as they proceed with the case, even though the Bankruptcy Court ultimately lacks constitutional authority to make such rulings.

The better reading of § 157(c)(1) is that a Bankruptcy Court should issue a proposed ruling to the District Court whenever the Bankruptcy Court conclusively determines a potentially dispositive issue of law or a finding of fact in a non-core proceeding, in whatever procedural context it should occur.  "Final" in § 157(c)(1) should be read to mean a final conclusion of law or a finding of fact – not a "final" resolution of the entire non-core proceeding as if § 157(c)(1) were an appellate statute.  Such a reading would be more consistent with the fact that a Bankruptcy Court may not constitutionally render conclusions of law and findings of fact in a non-core proceeding.  It would also be consistent with District Court oversight of magistrate judges (also non-Article III judges), who submit proposed conclusions of law to the District Court to review on all dispositive motions.  28 U.S.C. § 636.

In addition, even if "final" were interpreted to mean the same as "final" for appellate purposes, the standard for finality is not as strict when it comes to orders of a bankruptcy court.  *See*, *e.g.*, *In re Palm Coast, Matanza Shores Ltd. P'ship*, 101 F.3d 253, 256 (2d Cir. 1996) ("For purposes of appeal, the concept of 'finality' is more flexible in the bankruptcy context than in ordinary civil litigation." (internal quotation marks omitted)); *In re Yukon Energy Corp.*, 138 F.3d 1254, 1258 (8th Cir. 1998) (holding that "[f]inality for bankruptcy purposes is a complex subject" and involves "a more liberal standard of finality than is generally applied to nonbankruptcy proceedings" (internal quotation marks omitted)).

Denials of dispositive motions in bankruptcy cases can be final orders.  The Court should look to what the particular denial of a dispositive motion, such as the Law Firm Defendants' motion to dismiss, actually did.  In *In re Prestige Limited Partnership-Concord*, 234

F.3d 1108 (9th Cir. 2000), the order at issue was the Bankruptcy Court's denial of debtor's

motion for summary judgment in an adversary proceeding (which had been affirmed by the

District Court).  The Ninth Circuit acknowledged the principle that "finality" is "given a more

flexible reading" in bankruptcy cases, and considered the nature of the order denying summary

judgment.  The order had effectively disposed of the legal and factual issues, leaving only "the

issue of the amount" of the defendant's claim against the estate.  *Id.* at 1113.  The Ninth Circuit

noted that because the amount was unresolved, "the question arises of whether" the order was

"final."  *Id.*  The Ninth Circuit determined that it was a final order, because the issues on

summary judgment were "clearly potentially dispositive," and that there would be no need for

the parties and the court to undertake to determine the amount of the defendant's claim if the

order were reversed.  *Id.* at 1114 (the "order is therefore final for purposes of our jurisdiction").

Here, the Bankruptcy Court concluded that DSI's Profits Claims are viable under

New York law.  Tr. 38 ("I conclude that to the extent DSI is seeking to assert claims based on the

unfinished business doctrine with respect to hourly fee matters . . . it may do so").  This is the

core central issue in the Actions, and is a potentially dispositive issue.  Nothing in the

Bankruptcy Court's decision indicates that it will reconsider this conclusion of law.  *See In re*

*Adelphia Commc'ns Corp.*, 371 B.R. 660, 665 (S.D.N.Y. 2007) ("An order is final if nothing in

the order indicates any anticipation that the decision will be reconsidered." (alterations and

internal quotation marks omitted)), *aff'd*, 544 F.3d 420 (2d Cir. 2008).  This ruling should be

treated as "final" within the meaning of § 157(c)(1), because it is a dispositive conclusion of law

on the merits of DSI's claims. Under *Stern*, the Bankruptcy Court may not render this conclusion

of law.

For all these reasons, in the alternative to abstention, the Court should treat the Bankruptcy Court's conclusion of law that DSI's Profits Claims are cognizable under New York law as a proposed conclusion, allow the Law Firm Defendants to submit objections, and rule on the issue *de novo*.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Law Firm Defendants' motion to withdraw the reference to the Bankruptcy Court and for abstention, or in the alternative to abstention, treat the Bankruptcy Court's denial of the Law Firm Defendants' motions to dismiss as proposed conclusions of law and review it *de novo*.

Dated: New York, New York
      August 24, 2011

                                    MILLER & WRUBEL P.C.

                                    By:  /s/ Claire L. Huene
                                        Joel M. Miller
                                        Claire L. Huene
                                        570 Lexington Avenue
                                        New York, New York 10022
                                        Tel:  (212) 336-3500
                                        Fax:  (212) 336-3555

                                        *Attorneys for Defendant*
                                        *Dechert LLP*

                                      MORRISON & FOERSTER LLP

                                    By:  /s/  Brett H. Miller
                                        Brett H. Miller
                                        Erica J. Richards
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Tel:  (212) 468-8000
                                        Fax:  (212) 468-7900

                                        *Attorneys for Defendant*
                                        *Morrison & Foerster LLP*

QUINN EMANUEL URQUHART &
SULLIVAN LLP

By:  /s/  Eric M. Kay
      Eric J. Emanuel
      Susheel Kirpalani
      Eric M. Kay
      51 Madison Avenue, 22nd Floor
      New York, New York 10010
      Tel: (212) 849-7000
      Fax: (212) 849-7100

*Attorneys for Defendant*
*Akin Gump Strauss Hauer &Feld LLP*


DUANE MORRIS LLP
A Delaware Limited Liability Partnership

By:  /s/ Lawrence J. Kotler
      Lawrence J. Kotler
      1540 Broadway
      New York, NY 10036-4086
      Tel:  (212) 692-1000
      Fax:  (212) 692-1020

      Lewis R. Olshin, Esquire
      Lauren Lonergan Taylor, Esquire
      30 South 17th Street
      Philadelphia, PA  19103
      Tel:  (215) 979-1000
      Fax:  (215) 979-1020

*Attorneys for Defendant*
*Duane Morris LLP*

K&L GATES LLP

By: /s/ Jeffrey N. Rich
     Jeffrey N. Rich
     599 Lexington Avenue
     New York, New York 10022
     Tel:  (212) 536-4097
     Fax:  (212) 536-3091

*Attorneys for Defendant*
*K&L Gates LLP*


KRAMON & GRAHAM, P.A.

By: /s/  James P. Ulwick
     James P. Ulwick (*admitted pro hac vice*)
     One South Street, Suite 2600
     Baltimore, Maryland 21202
     Tel: (410) 752-6030

     - and -

MEISTER SEELIG & FEIN LLP

     Jeffrey Schreiber
     Howard Davis
     140 East 45th Street, 19th Floor
     New York, New York 10017
     Tel: (212) 655-2500
     Fax: (212) 655-3535

*Attorneys for Defendant*
*DLA Piper (US) LLP*

ARENT FOX LLP

By: /s/ George Angelich
    George Angelich
    Allen G. Reiter
    1675 Broadway
    New York, New York 10019
    Tel:  (212) 484-3900

*Attorneys for Defendant Arent Fox LLP*


SHEPPARD MULLIN RICHTER
   & HAMPTON LLP

By: /s/  Malani J. Cademartori
    Malani J. Cademartori
    Daniel L. Brown
    30 Rockefeller Plaza
    New York, New York 10112
    Tel: (212) 653-8700
    Fax: (212) 653-8701

    D. Ronald Ryland, Cal. Bar No. 49749
     (*admitted pro hac vice*)
    Four Embarcadero Center, 17th Floor
    San Francisco, CA 94111
    Tel: (415) 434-9100
    Fax: (415) 434-3947

*Attorneys for Defendant*
*Sheppard Mullin Richter & Hampton LLP*


DORSEY & WHITNEY LLP

By: /s/ Jessica D. Mikhailevich
    Jessica D. Mikhailevich
    250 Park Avenue
    New York, NY  10177
    Tel:  (212) 415-9200
    Fax:  (212) 953-7201

*Attorneys for Defendant Dorsey & Whitney LLP*

JONES DAY

By:  /s/ Steven C. Bennett
     222 East 41st Street
     New York, New York 10017
     Tel: (212) 326-3939
     Fax: (212) 755-7306

     Geoffrey S. Stewart
     51 Louisiana Avenue, N.W.
     Washington, D.C. 20001
     Tel: (202) 879-3939
     Fax: (202) 626-1700

*Attorneys for Defendant Jones Day*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August 2011, I caused the forgoing Brief in Support of Law Firm Defendants' Motion to Withdraw Reference and for Abstention to be served by hand on counsel for Development Specialists, Inc.

Dated:  New York, New York
      August 24, 2011

     /s/ Claire L. Huene
     Claire L. Huene