UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: COUDERT BROTHERS LLP,                                :

        Debtor.                                                  :

---

DEVELOPMENT SPECIALISTS, INC.,                              :
in its capacity as Plan Administrator                       :
for COUDERT BROTHERS LLP,                                   :
                                                            :   11-cv-5994 (CM)
        Plaintiff,                                               :
v.                                                          :
AKIN GUMP STRAUSS HAUER &                                   :
 FELD LLP,                                                 :
                                                            :
        Defendant.                                               :

---

DEVELOPMENT SPECIALISTS, INC.,                              :
in its capacity as Plan Administrator                       :
for COUDERT BROTHERS LLP,                                   :   11-cv-5973 (CM)
                                                            :
        Plaintiff,                                               :
v.                                                          :
ARENT FOX LLP,                                              :
                                                            :
        Defendant.                                               :

---

DEVELOPMENT SPECIALISTS, INC.,                              :
in its capacity as Plan Administrator                       :   11-cv-5995 (CM)
for COUDERT BROTHERS LLP,                                   :
                                                            :
        Plaintiff,                                               :
v.                                                          :
DORSEY & WHITNEY, LLP,                                      :
                                                            :
        Defendant                                                :

---

DEVELOPMENT SPECIALISTS, INC., :
in its capacity as Plan Administrator :
for COUDERT BROTHERS LLP, :          11-cv-5969 (CM)
                                     :
          Plaintiff,                 :
v.                                   :
DUANE MORRIS, LLP,                   :
                                     :
          Defendant.                 :
_____      :

DEVELOPMENT SPECIALISTS, INC., :
in its capacity as Plan Administrator :   11-cv-5974 (CM)
for COUDERT BROTHERS LLP, :               11-cv-5972 (CM)
                                     :    11-cv-5968 (CM)
          Plaintiff,                 :    11-cv-5970 (CM)
v.                                   :
JONES DAY,                           :
SCOTT JONES,                         :
GEOFFROY DE FOESTRAETS, and          :
JINGZHOU TAO,                        :
          Defendants.                :
_____      :

DEVELOPMENT SPECIALISTS, INC., :
in its capacity as Plan Administrator :
for COUDERT BROTHERS LLP, :          11-cv-5993 (CM)
                                     :
          Plaintiff,                 :
v.                                   :
KL GATES LLP,                        :
                                     :
          Defendant.                 :
_____      :

DEVELOPMENT SPECIALISTS, INC., :
in its capacity as Plan Administrator :   11-cv-5985 (CM)
for COUDERT BROTHERS LLP, :
                                     :
          Plaintiff,                 :
v.                                   :
                                     :
MORRISON & FOERSTER LLP,             :
                                     :
          Defendant.                 :
_____      :

DEVELOPMENT SPECIALISTS, INC.,    :
in its capacity as Plan Administrator    :
for COUDERT BROTHERS LLP,    :            11-cv-5971 (CM)
                                         :
                                         :
                Plaintiff,               :
                                         :
v.                                       :
SHEPPARD MULLIN RICHTER &                :
 HAMPTON LLP,                            :

DEVELOPMENT SPECIALISTS, INC.,    :
in its capacity as Plan Administrator    :
for COUDERT BROTHERS LLP,    :            11-cv-5983 (CM)
                                         :
                                         :
                Plaintiff,               :
                                         :
v.                                       :
DLA PIPER (US) LLP,                      :
                                         :
                Defendant.               :

DEVELOPMENT SPECIALISTS, INC.,    :
in its capacity as Plan Administrator    :
for COUDERT BROTHERS LLP,    :            11-cv-5984 (CM)
                                         :
                                         :
                Plaintiff,               :
                                         :
v.                                       :
                                         :
DECHERT LLP,                             :
                                         :
                Defendant.               :

## MEMORANDUM OF LAW OF PLAINTIFF DEVELOPMENT SPECIALISTS, INC. IN OPPOSITION TO THE LAW FIRM DEFENDANTS' MOTION TO <u>WITHDRAW THE REFERENCE AND FOR ABSTENTION</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................4

    A.   The Coudert Bankruptcy................................................................................. 4

    B.   The Law Firm Actions and Actions Against Other Firms...................................... 4

    C.   The Motions to Dismiss and the Bankruptcy Court's Decision ......................... 6

    D.   The Law Firms' Answers to the Complaint........................................................ 7

    E.   The Motions For Direct Certification Pursuant to 28 U.S.C. § 158(d)(2) ......................... 8

    F.   The Motions for Leave to Appeal ........................................................................ 8

    G.   Dechert's Actions in the Bankruptcy ................................................................... 9

ARGUMENT

I. THE MOTION TO WITHDRAW THE REFERENCE SHOULD BE DENIED......................9

    A.   The Motion to Withdraw Is Not Timely ........................................................ 10

    B.   Even If the Actions Are Not Core Proceedings, the Law Firms Have
         Either Expressly Or Impliedly Consented Pursuant to 28 U.S.C. § 157(c)(1) ................. 14

    C.   Withdrawal Of The Reference Will Not Promote Judicial Economy............................... 17

    D.   Withdrawal Of The Reference Will Not Promote The Uniformity Of Bankruptcy
         Administration. ...................................................................................................... 17

    E.   The Motion to Withdraw the Reference Is a Brazen Attempt at Forum Shopping .......... 17

    F.   None of the Remaining Factors Support Withdrawal of the Reference ........................... 18

II. ABSTENTION UNDER 28 U.S.C. § 1334(c)(1) IS INAPPROPRIATE ...............................18

III. THE BANKRUPTCY COURT'S RULINGS NEED NOT BE REVIEWED
AT THIS TIME...........................................................................................................24

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*In re 10th Ave. Ass'n., Inc.,*
  427 B.R. 283 (Bankr. S.D.N.Y. 2010)......................................................................21

*In re Bally Total Fitness of Greater N.Y., Inc.,*
  2011 WL 2118277 (Bankr. S.D.N.Y. May 24, 2001)..............................................22

*Beckman v. Farmer,*
  579 A.2d 618 (D.C.Ct. App. 1990)............................................................................7

*In re Bozell S.A.,*
  434 B.R. 86 (S.D.N.Y. 2010)...........................................................................19, 21

*In re CIS Corp.,*
  188 B.R. 873 (S.D.N.Y. 1995).................................................................................10

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976).................................................................................................19

*In re Conlon,*
  1998 WL 360255 (N.D.N.Y. June 30, 1998)............................................................22

*In re Coudert Brothers LLP Adversary Proceedings,*
  447 B.R. 706 (S.D.N.Y. 2011).........................................................................1, 8, 9

*In re CPW Acquisition Corp.,*
  2011 WL 830556 (Bankr. S.D.N.Y. Mar. 3, 2011) .................................................21

*In re Donald Sheldon & Co., Inc.,*
  1992 WL 396885 (S.D.N.Y. Dec. 17, 1992) ...........................................................16

*Dwyer v. Nicholson,*
  89 A.D. 2d 597 (2nd Dep't 1982) ..............................................................................3

*In re Elmasri,*
  369 B.R. 96, 103 (Bankr. E.D.N.Y. 2007)...............................................................21

*In re Enron Power Mktg., Inc.,*
  2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ..........................................................16, 18

*In re Enron Corp.,*
  2005 WL 1185804 (S.D.N.Y. May 18, 2005) ..........................................................17

*In re Enron Corp.,*
    317 B.R. 232 (S.D.N.Y. 2004)..................................................................................16

*In re Enron Corp.,*
    318 B.R. 273 (S.D.N.Y. 2004)..................................................................................16

*In re Enron Creditors Recovery Corp., et al.,*
    2008 WL 718284 (S.D.N.Y. Mar. 17, 2008) ..........................................................9

*In re FMI Forwarding Co., Inc.,*
    2004 WL 1348956 (S.D.N.Y. June 16, 2004) .......................................................13

*Frates v, Nichols,*
    167 So. 2d 77 (Fla. Dist. Ct. 1964) ........................................................................13

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989)............................................................................................12, 13

*Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison*
    *LLP),* 408 B.R. 318 (Bankr.N.D.Cal.2009) .......................................................7, 9

*In re JCC Capital Corp.,*
    147 B.R. 349 (Bankr. S.D.N.Y. 1992)...................................................................22

*Jewel v. Boxer,*
    203 Cal. Rptr. 13 (Cal. Ct. App. 1984)................................................................4, 5

*Kentile Floors v. Congoleum Corp.,*
    1995 WL 479512 (S.D.N.Y. Aug. 10, 1995).........................................................10

*Krys v Sugrue,*
    2008 WL 4700920 (S.D.N.Y. Oct. 23, 2008) ..................................................19, 20

*In re Labrum & Doak (Official Committee of Unsecured Creditors v, Ashdale),*
    227 B.R. 391 (Bankr. E.D. Pa. 1998) ..................................................................7, 9

*In re Lion Capital Group,*
    64 B.R. 199, 207 (S.D.N.Y 1985).........................................................................24

*In re Lyondell Chem. Co.,*
    402 B.R. 596 (Bankr. S.D.N.Y. 2009)..................................................................21

*Marr v. Langhoff,*
    322 Md. 657 (Md. 1991).........................................................................................7

*McHale v. Citibank, N.A.,*
    2009 WL 2599749 (S.D.N.Y. Aug. 24, 2009)..................................................16, 18

*Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.),*
  834 F.2d 1134 (2d Cir. 1987)..................................................................................15

*In re N.Y. City Off-Track Betting Corp.,*
  434 B.R. 131 (Bankr. S.D.N.Y. 2010)......................................................................15

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
  458 U.S. 50 (1982)...............................................................................................2, 12, 13

*Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp.,*
  2005 WL 147298, (S.D.N.Y. Jan. 24, 2005) ............................................................10

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion),*
  4 F.3d 1095 (2d Cir. 1993)......................................................................................10

*In re Pan American Corp.,*
  950 F.2d 839 (2d Cir. 1991).....................................................................................19

*In re Petrie Retail, Inc.,*
  304 F.3d 223 (2d Cir. 2002)..............................................................................23, 24

*Rhein v. Pesso,*
  194 A.D. 274 (1st Dep't 1920) ................................................................................3

*Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.),*
  2003 WL 23021972 (S.D.N.Y. Dec 24, 2003) ........................................................13

*Robinson v. Nussbaum,*
  11 F. Supp.2d 1 (D.D.C. 1997)...............................................................................7, 9

*Roell v. Withrow,*
  538 U.S. 580 (2003)...............................................................................................14

*In re Safety Harbor Resort and Spa,*
  2011 WL 3849639 (Bankr. M.D. Fla. Aug. 30, 2011) ............................................13

*In re Salander O'Reilly Galleries,*
  2011 WL 2837494 (Bankr. S.D.N.Y. July 18, 2011) ........................................11, 13

*Santalucia v. Sebright Transportation, Inc.,*
  232 F.3d 293 (2d Cir. 2000)....................................................................................6

*Shiboleth v. Yerushalmi,*
  58 A.D.3d 407 (1st Dep't 2009) ...........................................................................6, 7

*Stern v. Marshall,*
  564 U.S. __, 131 S. Ct. 2594 (June 23, 2011) ..............................................*passim*

*Sufrin v. Hosier,*
   896 F. Supp. 766 (N.D. Ill. 1995) ...................................................................7

*Sullivan v. Bodney,*
   16 Kan. App.2d 208 (Kan. Ct. App. 1991) ......................................................7

*In re The VWE Group, Inc.,*
   359 B.R. 441 (S.D.N.Y. 2007)........................................................................10

*In re Times Circle East, Inc.,*
   1995 WL 489551 (S.D.N.Y. Aug. 15, 1995) ..................................................10

*In re Tyson,*
   433 B.R. 68 (S.D.N.Y. 2010) .........................................................................15

*Vowell v. Beddow,*
   679 So.2d 637 (Ala. 1996) ...............................................................................7

*In re Wider,*
   2009 WL 4345411 (Bankr. E.D.N.Y.  Nov. 3, 2009) ....................................22

*Winstar Holdings, LLC v. Blackstone Group L.P.,*
   2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ................................................19

*In re: Worldcom Securities Litigation,*
   293 B.R. 308 (S.D.N.Y. 2003).........................................................................23

*Young v. Delaney,*
   647 A.2d 784 (D.C.Ct. App. 1994)...................................................................7


**STATUTES**

28 U.S.C. § 157(b)(1) ...........................................................................................11

28 U.S.C. §157(b)(2)(C) .....................................................................................2, 11

28 U.S.C. §157(b)(3) .............................................................................................14

28 U.S.C. § 157(c)(1)........................................................................................ *passim*

28 U.S.C. § 157(c)(2)..............................................................................................11

28 U.S.C. § 157(d) ...........................................................................................*passim*

28 U.S.C. § 636(b)(1)(C) ....................................................................................12, 14

28 U.S.C. § 1334(c)(1)........................................................................................18, 19

Federal Judgeship Act of 1984 .................................................................................11, 24

New York Partnership Law § 40(6) (McKinney 2011) ...............................................5, 6

New York Partnership Law § 43(1) (McKinney 2011) ...............................................5, 6

**OTHER AUTHORITIES**

130 Cong. Rec. H1848 (daily ed. March 21, 1984).......................................................24

Rule 9033 of the Federal Rules of Bankruptcy Procedure ...........................................4, 11, 18, 25

Development Specialists, Inc. (the "Plan Administrator"), in its capacity as the Plan Administrator for the liquidation of Coudert Brothers LLP ("Coudert" or the "Debtor"), respectfully submits this Memorandum of Law in opposition to the motion filed by the Defendants (collectively, the "Law Firms") to withdraw the reference and for abstention (the "Motion to Withdraw").

## PRELIMINARY STATEMENT

In 2008 and 2009, the Plan Administrator commenced actions against the Law Firms (collectively, the "Actions" or the "Law Firm Actions") seeking to recover, among other things, unfinished business which was transferred to the Law Firms following the dissolution of Coudert. The Motion to Withdraw represents the Law Firms' fourth meritless attempt to have the Actions dismissed or removed from the Bankruptcy Court. The Law Firms' initial attempt, a motion to dismiss, was denied by the Bankruptcy Court in a decision dated August 7, 2009, as modified (the "Decision and Order"). The Decision and Order upheld the viability of the claims asserted against the Law Firms and, contrary to the Law Firms' contention, was entirely consistent with New York law.

Unhappy with the result, the Law Firms asked the Bankruptcy Court to certify the Decision and Order for direct review to the Second Circuit Court of Appeals. That motion was denied by the Bankruptcy Court in a decision which rejected the position that these Actions involved "novel" questions of state law which required review by another court (the Law Firms' principal contention in this case). The Law Firms thereafter sought leave to appeal the Decision and Order to the District Court. Judge Marrero denied that motion, and determined that the Decision and Order was well-supported by applicable law and was not subject to substantial dispute.

Under the alleged pretext of the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. __, 131 S. Ct. 2594 (June 23, 2011), the Law Firms now request that the Court withdraw the reference to the Bankruptcy Court, abstain from addressing this matter, and force the Plan Administrator to commence new actions against the Law Firms in state court. Alternatively, the Law Firms request that the Court take the extraordinary step of reviewing the Decision and Order *de novo* now (which Judge Marrero has already found to be inappropriate at this juncture). The motivation behind the Motion is clear: the Law Firms want a "fourth bite" at the apple of trying to have these cases dismissed or removed from the Bankruptcy Court.

There is simply no reason to withdraw the reference here. As discussed below, the decision in *Stern* has no impact on the Bankruptcy Court's jurisdiction over the Law Firm Actions. Moreover, given that most of the Law Firm Actions were filed over three years ago, the Law Firms' request for withdrawal is not timely as required by 28 U.S.C. § 157(d). Although the Law Firms assert that the motions are timely because the decision in *Stern* purportedly provided the basis for the motion, *Stern* actually did very little other than strike down as unconstitutional 28 U.S.C. § 157(b)(2)(C), a statute **which is not implicated in the Law Firm Actions**. Thus, *Stern* does not affect the Law Firm Actions, and the Bankruptcy Court continues to have jurisdiction over them. Inasmuch as the exact same issues discussed in *Stern* regarding "public" and "private" rights were addressed many years earlier in the Supreme Court's decisions in *Marathon* and *Granfinancera*, the Law Firms could have filed this Motion years ago.

In addition, some of the Law Firms expressly consented to Bankruptcy Court jurisdiction either by filing a claim, admitting in their answers that the Court had jurisdiction, or demanding in their answers that the Bankruptcy Court enter "judgment" in their favor. The other Law Firms

all impliedly consented to the Bankruptcy Court's jurisdiction by virtue of their active

participation in the proceedings there without challenging the court's jurisdiction.  Additionally,

a similar adversary proceeding against another firm, Orrick Herrington & Sutcliffe LLP, remains

pending before the Bankruptcy Court and is not the subject of a motion to withdraw.  The

Bankruptcy Court's familiarity with the issues raised in the Actions, and the presence of a similar

action pending there, weigh strongly against withdrawal of these Actions from that court.

The Law Firms' request that this Court abstain from hearing these actions is equally

misguided.  The alleged basis for abstention, respect for state law, was not created by virtue of

the ruling in *Stern*, and as such, the Law Firm's motion could have been filed years ago.  In the

interim, the Bankruptcy Court has ruled on the viability of the claims at issue, and this Court has

determined that the Bankruptcy Court's ruling is not the subject of substantial dispute.  **None** of

the cases cited by the Law Firms involved a proceeding like this where the Federal courts have

already decided the state law issues.  Thus, the alleged need for, and appropriate time to seek

guidance from, the state courts on the unfinished business doctrine have long since passed.

Moreover, contrary to the Law Firms' suggestion, the Actions are neither novel nor

unprecedented under New York law.  The Actions are grounded in basic tenets of New York

partnership law, and New York law has long recognized the unfinished business doctrine.[1]

Similar claims have been asserted in adversary proceedings filed in connection with the

bankruptcies filed by other large law firms.  In each of those cases, the bankruptcy courts have

upheld the validity of unfinished business claims similar to those asserted in the Law Firm

---

[1] New York Partnership Law is modeled on the Uniform Partnership Act ("UPA").  *See also Rhein v. Pesso*, 194 A.D. 274, 276-77 (1st Dep't 1920) (partner required to turn over all fees following dissolution of partnership); *Dwyer v. Nicholson*, 89 A.D. 2d 597 (2nd Dep't 1982)(deceased partner entitled to share in the profits of **all business** pending on the date of his death) (emphasis added).

Actions. Thus, as Judge Marrero found, there is an ample basis for the Bankruptcy Court's decision upholding those claims here.

Further, because there is no parallel state proceeding pending, abstention would force the Plan Administrator to file an entirely new action in state court against the Law Firms. That would result in significant additional expense, substantial delay and duplicative litigation of the identical issues in multiple forums. That would also create tremendous judicial inefficiencies, the possibility of inconsistent results, and the waste of significant resources.

Finally, the Law Firms' extraordinary request that this Court review the Decision and Order *de novo* now is without merit. Judge Marrero has already determined that review of the Decision and Order by this Court is inappropriate at this juncture. Further, there is no basis or precedent under either 28 U.S.C. § 157(c)(1) or Rule 9033 of the Bankruptcy Rules of Federal Procedure ("Bankruptcy Rules") for the Court to review the Decision and Order at this stage of the proceedings, and the Law Firms fail to cite a single case in which a court did so.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Coudert Bankruptcy

On August 16, 2005, Coudert's partners voted to wind down its business, and thereafter began the process of selling assets and practices. *See* Declaration of David J. Adler ("Adler Decl."), ¶ 2. Coudert filed for bankruptcy on September 22, 2006. *Id.,* ¶ 3. On August 27, 2008, the Bankruptcy Court entered an Order confirming the First Amended Plan of Coudert Brothers LLP dated May 9, 2008 (as Modified) (the "Plan"). *Id.*, Ex. 1.

### B.    The Law Firm Actions and Actions Against Other Firms

On September 21, 2008, the Plan Administrator commenced adversary proceedings against the following law firms: (i) Akin Gump; (ii) Arent Fox; (iii) Dorsey & Whitney; (iv) Duane Morris; (v) Jones Day; (vi) KL Gates; (vii) Morrison & Foerster; and (viii) Sheppard

4

Mullin (the "2008 Law Firms"). *Id.,* ¶ 5.[2] On April 3, 2009, the Plan Administrator commenced adversary proceedings against Dechert and DLA asserting unfinished business claims (the "2009 Law Firms"). *Id.,* ¶ 6.[3]  On that same date, the Plan Administrator commenced an adversary proceeding against Baker & McKenzie asserting, among other things, unfinished business claims (the "Baker Action"). *Id.,* ¶ 7.  The Baker Action settled in August, 2010 and Baker paid the Plan Administrator $5.0 million to settle the unfinished business claims. *Id.,* ¶ 8.

The Actions assert claims for turnover, accounting, unjust enrichment and conversion. The basis for these claims is that the Law Firms received "unfinished business" of the Debtor. Unfinished business consists of transactions "begun but not yet completed" at the time of Coudert's dissolution.  The claims arise largely from two provisions of New York law: (1) no partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs (New York Partnership Law ("NYPL") § 40(6) (McKinney 2011); and (2) every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.  NYPL § 43(1) (McKinney 2011).

On December 10, 2010, the Plan Administrator commenced a similar adversary proceeding against Orrick, which remains pending before the Bankruptcy Court (the "Orrick Action").  Adler Decl., ¶ 9.  A motion to dismiss filed in the Orrick Action is scheduled for a hearing before the Bankruptcy Court on September 23, 2011. *Id.*

---

[2] *See* August 24, 2011 Declaration of Claire Heune, Ex. A, the complaint filed against Akin Gump, which is substantially similar to the complaints filed against the other 2008 Law Firms.
[3] In addition, the actions against Dechert and DLA assert fraudulent conveyance claims under §§ 548(a)(1)(B) and 544 of the Bankruptcy Code.

C.    **The Motions to Dismiss and the Bankruptcy Court's Decision**

On January 6, 2009, the 2008 Law Firms Moved to Dismiss the claims asserted against

them. *Id.*, ¶ 10. After the motions were fully briefed, the Bankruptcy Court conducted a hearing

on April 3, 2009 (the "April 3rd Hearing"), and asked the parties to submit additional briefing on

issues raised by the motions. *Id.*, ¶ 11, Ex. 2. After the filing of the actions against the 2009

Law Firms, those Law Firms requested that the Bankruptcy Court also address motions to

dismiss they intended to file, and to consolidate the briefing in all of the Law Firm Actions. *Id.*,

¶ 12, Ex. 3. On June 26, 2009, the 2009 Law Firms filed their motions to dismiss. *Id.*, ¶ 13.

After those motions were fully briefed,[4] the Bankruptcy Court addressed the motions to dismiss

during an all day hearing on July 31, 2009 (the "July 31st Hearing"). *Id.*, Ex. 4. In its Decision

and Order, the Bankruptcy Court determined that the unfinished business doctrine extends to fees

collected on hourly rate cases post-dissolution. *Id.*, Ex. 5. Contrary to the Law Firm's

suggestion, the ruling was grounded expressly in New York law. Judge Drain noted that New

York law recognizes the unfinished business doctrine, relying on the Second Circuit's decision in

*Santalucia v. Sebright Transportation, Inc.*, 232 F.3d 293 (2d Cir. 2000). *Id.* at pp. 42-44. Judge

Drain further found that the decisions in *Santalucia* and other New York cases supported the

application of the unfinished business doctrine to hourly cases. *Id.* at pp. 45-47.

For example, in his ruling, Judge Drain explained that *Shiboleth v. Yerushalmi*, 58

A.D.3d 407 (1st Dep't 2009) applied unfinished business to hourly rate cases:

> [E]ach of *Shiboleth*'s foregoing holdings supports DSI's objection to the [Law
> Firms'] argument that the New York courts have effectively overturned the
> unfinished business doctrine by allocating fees in simple recognition of post-
> dissolution hours worked. It would seem to me that, contrary to the [Law Firms']
> argument, and in keeping with the *Shiboleth* decision, most matters, whether on
> contingency or billed on an hourly fee basis, are capable of being valued as of a

---

[4] Supplemental briefs were filed by both the Law Firms and the Plan Administrator on July 10,
2009 and on July 20, 2009, respectively. Adler Decl., ¶ 14.

particular time based on projections of profit, and that such value should be the value that, in the normal instance, would be appropriately viewed as property of the dissolved firm to be shared among the partners (and, of course, distributable to creditors until creditors are paid in full) under the unfinished business doctrine. *Id.* at 46.

The Bankruptcy Court also noted that every case that has ever considered the issue has recognized, in interpreting the exact same statute,[5] that the unfinished business doctrine applies to law firms and to hourly rate cases. *Id.* at pp. 39-40.[6]

## D.  The Law Firms' Answers to the Complaint

In September of 2010, all of the 2008 Law Firms filed answers. Adler Decl., Exs. 6-13. None of the 2008 Law Firms requested a jury trial. *Id.* In their answers, both KL Gates and Dorsey & Whitney admitted that the Bankruptcy Court had jurisdiction. *Id.*, Exs. 8, 11. In addition, Duane Morris and Sheppard Mullin requested that the Bankruptcy Court enter judgment in their favor. *Id.*, Exs. 9, 13. On November 30, 2010, DLA Piper filed its answer, and requested a jury trial. *Id.*, Ex. 14. Thus, of the ten law firms at issue, DLA is the only firm to request a jury trial. On February 22, 2010, Dechert filed its answer and asserted a counterclaim, but did not seek a jury trial. *Id.*, Ex. 15. In its counterclaim, Dechert expressly stated that "**[the bankruptcy] Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157, 959(a) and 1334.**" *Id.*, ¶ 38 (emphasis added).

---

[5] NYPL §40 is identical to section 18 of UPA; NYPL §43 is identical to section 21 of UPA.
[6] Other jurisdictions have uniformly applied the unfinished business to hourly rate cases. *See Sufrin v. Hosier*, 896 F.Supp. 766 (N.D. Ill. 1995); *Robinson v. Nussbaum*, 11 F.Supp.2d 1 (D.D.C. 1997); *Sullivan v. Bodney*, 16 Kan.App.2d 208 (Kan. Ct. App. 1991); *Marr v. Langhoff*, 322 Md. 657 (Md. 1991); *Young v. Delaney*, 647 A.2d 784 (D.C.Ct. App. 1994); *Beckman v. Farmer*, 579 A.2d 618 (D.C.Ct. App. 1990); *Vowell v. Beddow*, 679 So.2d 637 (Ala. 1996); *Frates v, Nichols*, 167 So. 2d 77 (Fla. Dist. Ct. 1964). *See also In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318 (Bankr. N.D.Cal. 2009); *In re Labrum & Doak (Official Committee of Unsecured Creditors v, Ashdale)*, 227 B.R. 391, 409 (Bankr. E.D. Pa. 1998).

**E.**   **The Motions For Direct Certification Pursuant to 28 U.S.C. § 158(d)(2)**

In January of 2010, all of the Law Firms filed motions before the Bankruptcy Court

seeking direct certification of the Order to the Second Circuit pursuant to 28 U.S.C. §

158(d)(2)(the "§ 158(d)(2) Motion").  Adler Decl., Ex. 16.[7]  On February 5, 2010, the

Bankruptcy Court conducted a hearing (the "February 5th Hearing"), and denied the § 158(d)(2)

Motion.  *Id.*, Ex. 17.  In his decision, Judge Drain confirmed that his decision upholding the

claims against the Law Firms was based primarily on New York law, and rejected the Law

Firms' contention that additional guidance from another Court was required at that juncture.  *Id.*

at pp. 36-40, 42.

**F.**   **The Motions for Leave to Appeal**

Following the denial of the Certification Motions, the Law Firms sought leave to appeal

the decision of the Bankruptcy Court.  All of the appeals were consolidated in a single action

captioned *In re Coudert Brothers LLP Law Firm Adversary Proceedings* and assigned to Judge

Marrero.  After the parties fully briefed the motion, Judge Marrero issued a decision on March

21, 2011 denying the motion ("District Court Decision").  *See In re Coudert Brothers LLP*

*Adversary Proceedings*, 447 B.R. 706 (S.D.N.Y. 2011).

Because one of the factors in considering whether to grant leave to appeal is determining

whether there is "a substantial ground for difference of opinions," Judge Marrero directly

addressed the underlying merits of the claims asserted against the Law Firms and noted:

> The Law Firms have not cited any authority, and the Court is aware of none, that
> conflicts with the decision of the Bankruptcy Court. Rather, authorities in other
> jurisdictions uniformly hold that the unfinished business doctrine applies to

---

[7] Prior to the hearing on the § 158(d)(2) Motion, the Plan Administrator served document requests on the Law Firms.  None of the Law Firms have provided formal responses to those requests.  Adler Decl. ¶ 22.  Because the estate has very limited resources, the Plan Administrator wishes to conduct discovery in all of the Actions, including the Orrick Action, in an efficient, coordinated manner to maximize the recovery to unsecured creditors.

hourly fee matters as well as contingency fee matters. *See, e.g., Robinson v. Nussbaum,* 11 F.Supp.2d 1 (D.D.C.1997); *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP),* 408 B.R. 318 (Bankr.N.D.Cal.2009); *Official Comm. of Unsecured Creditors v. Ashdale (In re Labrum & Doak, LLP),* 227 B.R. 391 (Bankr.E.D.Pa. 1998). [*Id.,* 447 B.R. at 713]

## G. Dechert's Actions in the Bankruptcy

During the bankruptcy, Dechert filed a Motion for Relief from Stay to Effectuate a Setoff before the Bankruptcy Court (the "Setoff Motion"). Adler Decl., Ex. 18. After both the Debtor and the Committee opposed the Setoff Motion, the Bankruptcy Court denied the motion on March 25, 2008. *Id.,* Ex. 19. Dechert also filed Proof of Claim No. 307 in the Coudert Bankruptcy ("Dechert's Claim") in which it asserted a claim against the estate for over $5 million. *Id.,* Ex. 20. The Plan Administrator objected to Dechert's Claim. On November 30, 2009, Dechert filed opposition to the Objection ("Dechert Opposition"). *Id.,* Ex. 21. In the Dechert Opposition, Dechert acknowledged that the Dechert Claim and the Adversary Proceeding asserted against it were related and should be consolidated. *Id.* at pp 5-6.

## ARGUMENT

## I. THE MOTION TO WITHDRAW
## THE REFERENCE SHOULD BE DENIED

Withdrawal of the reference of a proceeding to a bankruptcy court is governed by 28 U.S.C. § 157(d), which provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on *timely* motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis supplied). A motion to withdraw the reference is "addressed to the sound discretion of the District Court, [and] permits the court to address the full range of issues related to the proper forum in which to litigate the pending dispute." *In re Enron Creditors Recovery Corp.,* 2008 WL 718284, at *3 (S.D.N.Y. Mar. 17, 2008).

The courts in this Circuit consider a number of factors in determining whether sufficient "cause" exists to justify withdrawing the reference from a case pending in bankruptcy court to the district court. These factors include: (1) whether the action is core or non-core; (2) judicial economy; (3) uniformity of bankruptcy administration; (4) reduction of forum shopping; (5) delay and costs to the parties; (6) expediting the bankruptcy process, and (7) the presence of a jury demand. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion),* 4 F.3d 1095, 1101 (2d Cir. 1993) (internal quotations and citations omitted).

"In applying these factors, district courts in this circuit have consistently held that 28 U.S.C. § 157(d) should be construed narrowly, so that it does not provide an 'escape hatch' out of bankruptcy court." *In re CIS Corp.,* 188 B.R. 873, 877 (S.D.N.Y. 1995) (citations omitted). *Accord In re Times Circle East, Inc.,* 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995) ("[T]he court must employ [withdrawal] judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court").

## A.   <u>The Motion to Withdraw Is Not Timely</u>

In the Second Circuit, courts have defined "timely" to mean "as soon as possible after the moving party has notice of the grounds for withdrawing the reference." *See In re The VWE Group, Inc.,* 359 B.R. 441, 446 (S.D.N.Y. 2007).[8] The Court need not consider the six *Orion* factors if a motion to withdraw is not timely.

The Law Firms mistakenly assert that the Motion to Withdraw is timely because *Stern* was issued on June 23, 2011. *See* Law Firms' Brief at 10, fn. 6. Because the purported basis for the Motion to Withdraw already existed under the current bankruptcy structure, which was <u>not</u>

---

[8] *See also Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp.,* 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005); *Kentile Floors v. Congoleum Corp.,* 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995).

altered by *Stern*, timeliness for purposes of assessing the Motion to Withdraw should be measured from the date of the filing of the action, not the issuance of *Stern*.

In *Stern*, the United States Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. In that case, the bankruptcy court had issued a *final* determination on a compulsory counterclaim for tortious interference filed by the debtor, Anna Nicole Smith a/k/a Vickie Lynn Marshall ("Vickie") against her step son, Pierce Marshall ("Pierce"). Pierce had filed a claim for defamation against Vickie, and the bankruptcy court issued a *final* order (*i.e.* a judgment) in both the adversary proceeding filed by Vickie and the defamation claim filed by Pierce.

*Stern* held that the judgment issued by the bankruptcy court on Vickie's tortious interference claim against Pierce exceeded the permissible constitutional authority of an Article I Court, and accordingly declared that 28 U.S.C. § 157(b)(2)(C) was unconstitutional as applied in that case. Stern did not alter the jurisdiction of the bankruptcy court that was established under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"). Under BAFJA and the Order of Reference,[9] Bankruptcy judges may *hear, and determine* all *core* proceedings *arising under* title 11, or *arising in* a case under title 11. 28 U.S.C. § 157(b)(1) (emphasis added); *see also In re Salander O'Reilly Galleries*, 2011 WL 2837494 at *5 (Bankr. S.D.N.Y. July 18, 2011). "Core" proceedings are those that directly relate to a bankruptcy court's central functions. If a proceeding is a core proceeding, the bankruptcy judge may hear, determine and fully adjudicate the matter (*i.e.* issue a final order and judgment). If a proceeding is a non-core/related proceeding, the bankruptcy judge may hear,

---

[9] The Standing Order may be found at http://www.nysb.uscourts.gov/orders/m61.pdf.

determine and fully adjudicate the matter unless one of the parties does not consent to the

bankruptcy court's adjudication of such matters.  28 U.S.C. § 157(c)(2).  Consent can be express

or implied.  If a party does not consent to the adjudication by the bankruptcy court, the

bankruptcy court is limited to issuing proposed findings of fact and conclusions of law to the

district court for review pursuant to Bankruptcy Rule 9033.  28 U.S.C. § 157(c)(1).[10]

      *Stern* does not alter the existing bankruptcy jurisdictional structure and does not deprive

the Bankruptcy Court of jurisdiction to adjudicate the Law Firm Actions.  In fact, the Supreme

Court went to great lengths to explain that the jurisdictional framework enacted under BAFJA

remained intact and was <u>not</u> unconstitutional:

> As explained below, bankruptcy courts may hear and enter final
> judgments in "core proceedings" in a bankruptcy case. **In non-core
> proceedings, the bankruptcy courts instead submit proposed findings
> of fact and conclusions of law to the district court, for that court's
> review and issuance of final judgment.**

*Id.* at 2602 (emphasis supplied).

> **When a bankruptcy judge determines that a referred "proceeding . . .
> is not a core proceeding but . . . is otherwise related to a case under
> title 11," the judge may only "submit proposed findings of fact and
> conclusions of law to the district court." §157(c)(1). It is the district
> court that enters final judgment in such cases after reviewing *de novo*
> any matter to which a party objects.**

*Id.* at 2604 (emphasis supplied).[11]

      In *Stern*, the Supreme Court emphasized the narrowness of its decision and the fact that

this decision does not in any way change the jurisdictional structure of the bankruptcy courts:

> As described above, the **current** bankruptcy system also requires the
> district court to review de novo and enter final judgment on any matters
> that are "related to" the bankruptcy proceedings, §157(c)(1), and permits

---

[10] These procedures parallel the procedures established for review of rulings by Magistrate
Judges under 28 U.S.C. §636(b)(1)(C).

[11] Thus, the Bankruptcy Court has, at the very least, the authority to enter proposed findings of
fact and conclusions of law, as the Law Firms concede.

the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, §157(d).

**If our decision today does not change all that much, then why the fuss?** …

We conclude today that Congress, in one **isolated** respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. Accordingly, the judgment of the Court of Appeals is affirmed.

*Id.* at 2620 (emphasis supplied).

In *Stern*, the Supreme Court reiterated its prior analysis concerning "public" or "private" rights as set forth in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). As it did in *Marathon* and *Granfinanciera*, the Supreme Court in *Stern* discussed the separation of powers doctrine under the Constitution and conceptual limitations on the power of bankruptcy judges to finally decide matters that otherwise would be decided by an Article III Court.[12] The *Stern* Court made clear that it was reaffirming its analysis in *Marathon* and *Granfinanciera*. *Stern* at 2614, 2618; *see also In re Safety Harbor Resort and Spa,* 2011 WL 3849639 at *11 (Bankr. M.D. Fla. Aug. 30, 2011)("the *Stern* Court's use of the word 'reaffirm' makes clear that nothing has changed…. The Supreme Court does not ordinarily decide important questions of law by cursory dicta. And it certainly did not do so in *Stern.*").

Because the limits on bankruptcy court authority discussed in *Stern* existed long before the decision, the Motion to Withdraw is untimely. *See In re FMI Forwarding Co., Inc.,* 2004 WL 1348956 at *6 (S.D.N.Y. June 16, 1984) (motion was untimely when made 18 months after movant became aware of grounds for the motion); *Rickel & Assocs., Inc. v. Smith (In re Rickel &*

---

[12] More recently, in *In re Salander O'Reilly Galleries,* 2011 WL 2837494 at *4-5, Judge Morris reiterated that *Stern* relied on its predecessors.

*Assocs., Inc.*), 2003 WL 23021972 at *2 (S.D.N.Y. Dec. 24, 2003) (motion was untimely when filed 31 months after commencement of adversary proceeding).

**B.     Even If the Actions Are Not Core Proceedings, the Law Firms Have Either Expressly Or Impliedly Consented Pursuant to 28 U.S.C. §157(c)(1)[13]**

### 1.     Dechert

As noted above, Dechert filed a proof of claim in Coudert's bankruptcy, and asserted counterclaims in which Dechert stated that "[t]his Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157, 959(a) and 1334." In addition, Dechert asserted an indemnity claim against the estate, and a counterclaim asserting that "to the extent Dechert were found to be liable, it is entitled to reduce the amount of any such liability by set-off or recoupment of the amounts the Debtor owes to Dechert, including with respect to these Counterclaims and Dechert's Claim." In its Objection, Dechert stated that Dechert's Claim was intertwined with the Action commenced by the Plan Administrator, and asked that it be determined in a consolidated hearing with that Action. Accordingly, Dechert has expressly consented to the determination of the action against it in the bankruptcy court.

### 2.     The Other Law Firms

The Supreme Court has confirmed that a party can impliedly consent to jurisdiction by virtue of its conduct. In *Roell v. Withrow*, 538 U.S. 580 (2003), the Supreme Court determined that a party could impliedly consent to have a matter determined by a magistrate judge:

> [28 U.S.C.] §636(c)(1) speaks only of 'the consent of the parties,' without qualification as to form ... *We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of*

---

[13] The Plan Administrator does not concede that the Actions are non-core proceedings. Indeed, 28 U.S.C. §§ 157(b)(2)(E), and (F) provide that turnover and fraudulent conveyance claims are core proceedings. Moreover, under 28 U.S.C. § 157(b)(3), the Bankruptcy Court should decide in the first instance whether the matters are core or not.

> *gamesmanship by depriving parties of the luxury of waiting for the outcome
> before denying the magistrate judge's authority. Judicial efficiency is served; the
> Article III right is substantially honored.*

*Id.* at 588-591 (emphasis supplied); *see also In re Tyson*, 433 B.R. 68, 77 (S.D.N.Y. 2010)("even

if the [action] was not 'core' … Defendants did not object to the Bankruptcy Court's assumption

of jurisdiction and therefore impliedly consented to the exercise of that jurisdiction.).

In *Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d

1134 (2d Cir. 1987), the Second Circuit ruled that:

> We conclude that [defendant's] failure to object to [the bankruptcy judge's]
> assumption of "core jurisdiction" at any point in these extensive proceedings
> before the bankruptcy court and the further failure to object to any part of the
> appeal process in the district court constitutes consent to the final adjudication of
> this controversy before the bankruptcy court.… in the instant case, *Sasson's
> silence on the jurisdictional issue before both Judge Lifland and the district judge
> can only be construed as implied consent. Sasson had several opportunities to
> object to Judge Lifland's assumption of jurisdiction … and, of course, any time
> throughout the district court proceedings. Sasson's protest at this stage in the
> litigation more closely resembles an afterthought than a bona fide objection. We
> determine that Sasson impliedly consented to the bankruptcy court's assumption
> of "core" jurisdiction, and thus the district court correctly reviewed that court's
> findings under the "clearly erroneous" standard.*

*Id.* at 1137-38 (emphasis supplied). Likewise, the Law Firms had ample opportunity to raise any

alleged jurisdictional issues, including at any of the following points: (i) during the briefing on

the Motion To Dismiss; (ii) at the April 3rd Hearing; (iii) at the July 31st Hearing; (iv) in their

Answers; (v) in their § 158(d)(2) Motions; (vi) at the February 3rd Hearing; or (vii) in the Motion

for Leave to Appeal. The Law Firms failed to raise those concerns. By their conduct (including

by failing to raise these issues and by requesting that the Bankruptcy Court exercise its powers to

certify), the Law Firms have impliedly consented to jurisdiction before the Bankruptcy Court.[14]

---

[14] In addition, both KL Gates and Dorsey admitted in their respective answers that: "[t]his Court
has jurisdiction over this proceeding under chapter 11 of the Bankruptcy Code, pursuant to 28
U.S.C. §§ 151, 157 and 1334." Duane Morris and Sheppard Mullin demanded that the Court
enter *judgment* (not a recommendation) dismissing the complaints. These statements constitute

C.    **Withdrawal of the Reference Will Not Promote Judicial Economy**

Judicial economy and efficiency are critical factors in determining a motion to withdraw the reference. Even if the underlying case is non-core, withdrawal is inappropriate if the party seeking withdrawal cannot demonstrate that withdrawal would serve the interests of judicial economy and efficiency. *In re Enron Power Mktg., Inc.*, 2003 WL 68036, at *7 (S.D.N.Y. Jan. 8, 2003). The fact that a claim may be non-core or that a defendant will not consent to a jury trial before the bankruptcy court "are of little significance if the other considerations -- promotion of judicial efficiency, decrease in delays and costs to the parties, and prevention of forum shopping -- weigh overwhelmingly in favor or maintaining the action in the bankruptcy court." *McHale v. Citibank, N.A.*, 2009 WL 2599749, at * 6 (S.D.N.Y. Aug. 24, 2009).

Considerations of judicial economy and efficiency weigh strongly against withdrawing this case from the Bankruptcy Court. Judge Drain has overseen the bankruptcy for five years, during which time he has handled numerous matters involving the unfinished business cases, including the Orrick Action. Because the Orrick Action remains pending before the Bankruptcy Court, it would be far more efficient to maintain these Actions there as well, which would also reduce the risk of inconsistent results. Where, as here, the Bankruptcy Court is familiar with the underlying matter, courts routinely deny motions to withdraw cases from the bankruptcy court because doing so would undermine judicial efficiency and economy. *See, e.g., In re Enron Corp.*, 318 B.R. 273, 275 (S.D.N.Y. 2004) (denying motion to withdraw reference because Bankruptcy Court "has extensive familiarity with case"); *In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004) (rejecting argument that right to a jury trial in district court warranted

---

consent to the bankruptcy court issuing final orders. *See In re Donald Sheldon & Co., Inc.*, 1992 WL 396885, at * 4 (S.D.N.Y. Dec 17, 1992)(defendants' demand in their answers for an order "dismissing the Complaint" was consent to entry of final judgment by bankruptcy court).

withdrawal where the adversary proceeding was still in the early stages, and noting that the bankruptcy court is best equipped to handle discovery and other pretrial matters).

**D.      Withdrawal Of The Reference Will Not Promote The Uniformity Of Bankruptcy Administration**

Keeping these Actions before the Bankruptcy Court is far more likely to serve the interest of uniformity of bankruptcy administration than withdrawing the reference.  Courts that have found increased efficiency and uniformity by leaving matters in the Bankruptcy Court have done so where similar proceedings were already pending in the Bankruptcy Court.  That is precisely the case here: Judge Drain is intimately familiar with these matters, and is presiding over the Orrick Action.  In such cases, the goal of uniformity is best served by denying a motion to withdraw the reference.  *See In re Enron Corp.*, 2005 WL 1185804, at *3 (S.D.N.Y. May 18, 2005) (even in a non-core proceeding, "the uniform administration of the bankruptcy court proceedings weighs in favor of not withdrawing the reference" when "[t]he bankruptcy court is more thoroughly familiar [than the district court] with the Debtors' claims and issues in [an adversary proceeding] and all of the other [Debtor]-related cases)."

**E.      The Motion to Withdraw the Reference Is a Brazen Attempt at Forum Shopping**

As explained above, the Law Firms have had little success in these cases.  Their Motion to Dismiss was denied by the Bankruptcy Court, who thereafter denied their § 158(d)(2) Motions.  Their Motion for Leave to Appeal was denied by Judge Marrero.  The Law Firms have now sought to use *Stern* as a pretext to escape from the Bankruptcy Court.  Tellingly, the Law Firms identified the Withdrawal Motion as related to the Retiree Action,[15] an action where only *one* of the 10 Law Firms is a defendant, rather than the prior proceeding assigned to Judge Marrero.  Thus, it is perfectly clear that the Law Firms are engaged in blatant forum shopping.

---

[15] *See Retired Partners of Coudert Brothers v. Baker & McKenzie LLP*, 11-CV-2785 (CM).

17

**F.**     **None of the Remaining Factors Support Withdrawal of the Reference**

The remaining factors (expediting the bankruptcy process and the presence of a jury demand) do not favor withdrawal. The Law Firms' erroneously note that most of them asserted a right to a jury trial. Law Firms' Brief at 2, fn. 3. In fact, only one of the Law Firms, DLA Piper, sought a jury trial. Even if DLA Piper was entitled to a jury trial, a District Court is not compelled to withdraw a reference "simply because a party is entitled to a jury trial." *In re Enron Power Mktg., Inc.,* 2003 WL 68036, at *6.

Further, even if a party is entitled to a jury trial, it is well-settled that withdrawal can take place at a later date, permitting the Bankruptcy Court to conduct pre-trial proceedings until the case is ready for trial by a district court. *McHale,* 2009 WL 2599749, at * 5; *In re Enron Mktg, Inc.,* 2003 WL 68036, at *10. In any event, the Bankruptcy Court is authorized to issue proposed findings of fact and conclusions of law on any non-core claims to the District Court. 28 U.S.C. § 157(c)(1). Those proposed findings of fact and conclusions of law would then be reviewed by the District Court pursuant to Rule 9033. In short, given the Bankruptcy Court's extensive involvement with the issues in these Actions, they should remain in the Bankruptcy Court.

## II. ABSTENTION UNDER 28 U.S.C. § 1334(C)(1) IS INAPPROPRIATE

Because the Bankruptcy Court has jurisdiction over these Actions and withdrawal of the reference is inappropriate, this Court need not reach that part of the Law Firms' motion seeking abstention. Even if the Court reaches that question, abstention is inappropriate here for a number of reasons.

28 U.S.C. § 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Section 1334(c)(1) is informed by and interpreted according to "principles

18

developed under the judicial abstention doctrines." *In re Pan American Corp.,* 950 F.2d 839,

846 (2d Cir. 1991). Those principles provide that federal courts possess a "virtually unflagging

obligation ... to exercise the jurisdiction given them," *Colorado River Water Conservation Dist.*

*v. United States,* 424 U.S. 800, 817 (1976), and may abstain only for a few "extraordinary and

narrow exception[s]." *Id.* at 813.

Accordingly, federal courts must be "sparing" in their exercise of discretionary

abstention. *Krys v Sugrue,* 2008 WL 4700920, at * 10 (S.D.N.Y. Oct. 23, 2008); *Winstar*

*Holdings, LLC v. Blackstone Group L.P.,* 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007).

Further, "[t]his circuit has recognized that abstention should only be exercised in narrow

circumstances." *In re Bozell S.A.,* 434 B.R. 86, 102 (S.D.N.Y. 2010). The movant bears the

burden of establishing that permissive abstention is warranted. *Id.* The Law Firms cannot carry

that burden here.

The primary rationale advanced by the Law Firms' for abstention is their contention that

the unfinished business claims entail unsettled questions of state law, which in their view

suggests that New York state courts have a greater interest in resolving these claims. Law

Firms' Brief at pp. 17-18. As explained above, these claims are not "novel" or "unprecedented,"

and as Judge Marrero has found, the Bankruptcy Court's ruling upholding the viability of those

claims is not the subject of substantial dispute.

More importantly, the Law Firms' professed desire for a state court to resolve the

unfinished business claims is utterly contradicted by the Law Firms' repeated and extensive

efforts to have the *Federal* courts address these claims over the past three years *without seeking*

*abstention.* After most of these actions were filed in September 2008 (three years ago), the Law

Firms moved to dismiss those claims in the Bankruptcy Court. At the Law Firms' request, the

Bankruptcy Court issued a decision, after extensive briefing by the parties, addressing the viability of those claims. The Law Firms thereafter initiated substantial motion practice in the Federal courts (motions for certification and for leave to appeal) in unsuccessful attempts to obtain immediate review of the Bankruptcy Court's decision.

Given the extensive involvement by the Federal courts in addressing these claims, abstention is totally inappropriate at this juncture. Indeed, none of the cases relied on by the Law Firms in support of their request for abstention involved a proceeding pending for three years in which the Bankruptcy Court had already issued a ruling addressing the sufficiency of the underlying claims before the abstention motion was made (much less the filing of unsuccessful motions for certification or for leave to appeal). If the Law Firms truly believed that these claims should be resolved in state court, they could have asked the Federal courts to abstain before asking them to address the viability of the claims. Given that the Federal courts have ruled against them, the Law Firms' professed respect for state law and comity ring hollow.

Moreover, there is nothing about the nature of the legal issues involved in this action that would make their resolution by the Federal courts inappropriate or more suitable in state court. Abstention in deference to the greater expertise or interest of other courts is generally reserved for matters which the Federal courts do not ordinarily address or have the ability to determine. *See Krys*, 2008 WL 4700920, at * 10 (denying motion to abstain from determining "straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would warrant abstention based on comity concerns."). That is surely not the case here.[16] This Court, and the Bankruptcy Court, address claims like those at issue in this action on

---

[16] In most of the cases cited by the Law Firms in which abstention was granted in deference to the need for other forums to address the particular legal questions involved, the issues were of the type which the bankruptcy court does not ordinarily address and was ill-suited to determine,

a regular basis.[17]  Contrary to the Law Firms' suggestion, neither Judge Drain nor Judge Marrero

required guidance in addressing the viability of the claims at issue.  In denying the Law Firms'

motion for certification, Judge Drain rejected the contention that any guidance was needed from

any other court on these issues at that juncture.[18]  Likewise, Judge Marrero's finding that there

was ample precedent for Judge Drain's decision further belies the Law Firm's contention that the

law governing Plaintiffs' unfinished business claims is "unsettled."  Moreover, the unfinished

business claims asserted in the *Labrum* and *Brobeck* proceedings (*supra* at p. 8) were determined

in bankruptcy court, not state court.  Thus, the Bankruptcy Court (and this Court) are more than

capable of overseeing the disposition of the claims in this case.  Accordingly, factors two and

three (concerning the presence of and difficulty of state law issues) of the twelve factors listed by

the Law Firms at page 17 of their Brief do not weigh in favor of abstention.  *See Bozell*, 434 B.R.

at 102 (rejecting claim that questions of foreign law required abstention in favor of pending

---

unlike the issues in this matter. *See In re N.Y. City Off-Track Betting Corp.*, 434 B.R. 131, 152
(Bankr. S.D.N.Y. 2010)(involving interpretation of racing law issues usually decided by New
York Racing & Wagering Board); *In re Lyondell Chem. Co.*, 402 B.R. 596, 614 (Bankr.
S.D.N.Y. 2009)(interpretation of New Jersey supersedeas bond required "consideration of New
Jersey practice and other applicable New Jersey precedent" which New Jersey state courts have
"greater knowledge of"); *In re CPW Acquisition Corp.*, 2011 WL 830556, at * 7 (Bankr.
S.D.N.Y. Mar. 3, 2011)(abstention granted where "difficulty of applying English law" made "an
English Court [] better suited to determine" the issues); *In re 10th Ave. Ass'n., Inc.*, 427 B.R. 283,
299 (Bankr. S.D.N.Y. 2010)(involving issues concerning New York's complex regulatory
scheme governing rent stabilized residential units, with which state courts were more familiar);
*In re Elmasri*, 369 B.R. 96, 103 (Bankr. E.D.N.Y. 2007)(involving interplay of state homestead
law and child support law, traditionally an area ill-suited for determination in Bankruptcy Court,
where no precedent existed which would enable the court to predict with reasonable certainty
how a state court would rule).
[17] Addressing the viability of the claims at issue here required an analysis of partnership,
bankruptcy and other applicable law, areas which the bankruptcy courts routinely address.
[18] Indeed, "bankruptcy courts are not 'required to abstain from deciding issues which are of
central importance to the integrity of the bankruptcy process.'" *Bozell*, 434 B.R. at 102 (quoting
*Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 946 (Bankr. S.D.N.Y. 1995)).

proceeding in Luxembourg where the record sufficiently established applicable and settled legal principles of Luxembourg law for bankruptcy court to adjudicate dispute).

The remaining factors employed in the permissive abstention analysis weigh heavily against abstention here. Factors one and four both favor a denial of the motion. Unlike nearly all of the cases relied on by the Law Firms,[19] there is no related proceeding commenced in state court against the Law Firms. As such, abstention would force the Plan Administrator to file an entirely new action in state court (assuming one could be filed), generating significant delay and additional expense that would greatly prejudice the Debtor and adversely effect the "efficient administration of the estate." *In re Conlon*, 1998 WL 360255, at * 2 (N.D.N.Y. June 30, 1998)(affirming the denial of abstention where it would require filing of new action in state court, causing delay and prejudice); *In re JCC Capital Corp.*, 147 B.R. 349, 356 (Bankr. S.D.N.Y. 1992)(denying abstention where lack of a pending state action would require dismissal and filing of new action, which would not promote efficient administration of the estate).[20] Additionally, because the Federal courts have already addressed the viability of the claims at issue, forcing the Plan Administrator to commence an entirely new proceeding to address these

---

[19] *See, e.g., In re Wider*, 2009 WL 4345411, at * 2 (Bankr. E.D.N.Y. Nov. 3, 2009); *In re Bally Total Fitness of Greater N.Y., Inc.*, 2011 WL 2118277, at * 2 (Bankr. S.D.N.Y. May 24, 2001).

[20] In opposing a motion pending before this Court in an action by the Retired Partners of the Debtor for abstention or remand, Dechert itself argued, as the Plan Administrator contends here, that being forced to litigate in state court "would waste scarce judicial resources and estate assets and result in significant prejudice to the Law Firm Defendants." (Case No. 11-2785 (CM), Dechert's August 22, 2011 Brief at p. 15, ECF # 20). Dechert contradicted another position it has taken here by arguing in that case that an alleged issue of first impression under state law did not support abstention because the Bankruptcy Court's decision was supported by applicable precedent (as is the case here). *Id.* at 16. In that same brief, Dechert also admitted that the adversary proceeding affected the administration of the Debtor's estate, and that it would "significantly advance the administration of the estate" to have the claims asserted against it determined in Federal court. *Id.*

claims yet again would utterly wasteful of this Court's resources and further undermine the efficient administration of the Debtor's estate.

Given that the Orrick Action remains pending before the Bankruptcy Court, and that there will be further proceedings before the Bankruptcy Court against at least some of the Law Firms (given their consent to the Bankruptcy Court's jurisdiction), abstention would also create duplicative litigation of these same issues in multiple forums. That would result in tremendous judicial inefficiencies and the possibility of inconsistent results, which favors denial of abstention. *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002)(abstention was properly denied where it would create risk of inconsistent results). The interests of efficiency and judicial economy would be far better served by having all of Law Firms Actions determined by the Bankruptcy Court, which is already intimately familiar with, and has jurisdiction over, the claims. *In re Worldcom Securities Litigation*, 293 B.R. 308, 333 (S.D.N.Y. 2003)(denying abstention where "judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists" and all proceedings could be determined in one court). Indeed, these actions are entirely related to the proceedings before the Bankruptcy Court (including the Orrick Action), and as such, factor six also weighs in favor of denying the Motion.

Contrary to the Law Firms' contention, the state law claims cannot be readily or efficiently severed from the remaining claims, and as such, factor eight does not favor abstention. Factor nine also weighs in favor of maintaining these actions in the Bankruptcy Court; because that court will be resolving similar claims, it will not be a "burden on the court's docket." With respect to factor ten, given that there was no pre-existing state law action between these parties, the Plan Administrator's commencement of the Law Firm Actions did not involve

23

forum shopping.[21]   Lastly, factors eleven and twelve both weigh against abstention: only one of

the Law Firms has requested a jury trial, and the Plan Administrator is a party to each of the

Actions.  For these reasons, abstention would be entirely inappropriate here.

### III. THE BANKRUPTCY COURT'S RULINGS NEED NOT BE REVIEWED AT THIS TIME

The Law Firms contend that this Court should treat the Bankruptcy Court's decision as

proposed conclusions of law pursuant to 28 U.S.C. § 157(c)(1), and review that decision *de novo*

now.  While the Plan Administrator does agree with the Law Firms' concession that the

Bankruptcy Court has, at the very least, jurisdiction to issue rulings in the form of proposed

conclusions, there is no valid procedural mechanism for this Court to review the Bankruptcy

Court's decision *de novo* now.

One of the co-sponsors of BAFJA described the process intended to be followed pursuant

to 28 U.S.C. § 157 as follows:

> The district court may refer all bankruptcy matters to bankruptcy judges.
> Bankruptcy judges will be able to enter a final judgment in much the same way as
> an article [III] judge would in all proceedings integral to the core bankruptcy
> functioning of restructuring the obligations of the debtor and his creditors …. The
> bankruptcy judge will conduct the trial, make a recommendation to the district
> court; the district court must review the transcript before entering judgment; but
> as under the Magistrates Act, the district judge need not conduct a second trial,
> and where the parties consent, the bankruptcy judge may enter a judgment as in a
> core bankruptcy proceeding.

130 Cong. Rec. H1848 (daily ed. March 21, 1984) (statement of Rep. Kindness), cited in *In re*

*Lion Capital Group*, 64 B.R. 199, 207 (S.D.N.Y 1985).

Nothing in *Stern* has changed that procedure.  Even if the Law Firm Actions were non-

core proceedings, Bankruptcy Rule 9033 sets forth specific procedures for review of proposed

---

[21] Given the adverse rulings issued by the courts in this matter, the Law Firms' attempt to have
the state courts address these claims appears to be blatant forum shopping by the Law Firms,
which is ground for denial of the motion.  *Petrie Retail, Inc.*, 304 F.3d at 232 (denial of
abstention was appropriate to prevent forum shopping).

findings of fact and conclusions of law, which do not permit *de novo* review now.  The Law Firms' motion for leave to appeal the Bankruptcy Court's decision to this Court has been denied, and nothing in 28 U.S.C. § 157(c)(1) provides a mechanism for the Law Firms to again seek interlocutory review of that decision now.

Rather than follow the statutorily-required process, the Law Firms invite the Court to depart from it by treating the Bankruptcy Court's decision as final.  However, the Law Firms do not cite a single decision in which a court did so in comparable circumstances, and instead argue that this Court should interpret § 157(c)(1) in a way no other court has done.  There is no reason to accept that invitation, particularly in view of the fact that Judge Marrero has already determined that review of the Bankruptcy Court's decision is inappropriate at this juncture.  The Law Firms should follow the normal procedure, which has not been disturbed by *Stern*, and return this matter to the Bankruptcy Court for the adjudication of these claims.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in all requests and grant such other and further relief as this Court deems proper.

Dated: New York, New York
       September 7, 2011

McCARTER & ENGLISH, LLP
Attorneys for Development Specialists, Inc.,
Plan Administrator for Coudert Brothers
LLP

/s/ David J. Adler
David J. Adler
Daniel A. Pollack
Joseph Scholz
245 Park Avenue, 27th Floor
New York, New York 10167
(212) 609-6800 – Telephone
(212) 609-6921 – Facsimile

25