UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>                    Plaintiff,<br><br>v.<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP,<br><br>                    Defendant. | No. 11-cv-05994 (CM) |
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>                    Plaintiff,<br><br>v.<br><br>ARENT FOX LLP,<br><br>                    Defendant. | No. 11-cv-05973 (CM) |
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>                    Plaintiff,<br><br>v.<br><br>DORSEY & WHITNEY LLP,<br><br>                    Defendant. | No. 11-cv-05995 (CM) |
| DEVELOPMENT SPECIALISTS, INC.,<br>in its capacity as Plan Administrator for<br>Coudert Brothers LLP,<br><br>                    Plaintiff,<br><br>v.<br><br>DUANE MORRIS LLP,<br><br>                    Defendant. | No. 11-cv-05969 (CM) |

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br>Plaintiff, <br>v. <br><br>JONES DAY, <br><br>Defendant. | No. 11-cv-05974 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br>Plaintiff, <br>v. <br><br>JONES DAY and SCOTT JONES, <br><br>Defendants. | No. 11-cv-05972 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br>Plaintiff, <br>v. <br><br>JONES DAY and GEOFFROY DE FOESTRAETS, <br><br>Defendants. | No. 11-cv-05968 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP, <br><br>Plaintiff, <br>v. <br><br>JONES DAY and JINGZHOU TAO, <br><br>Defendants. | No. 11-cv-05970 (CM) |

| | |
|---|---|
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>             Plaintiff,<br><br>v.<br><br>K&L GATES LLP,<br><br>             Defendant. | No. 11-cv-05993 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>             Plaintiff,<br><br>v.<br><br>MORRISON & FOERSTER LLP,<br><br>             Defendant. | No. 11-cv-05985 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>             Plaintiff,<br><br>v.<br><br>SHEPPARD MULLIN RICHTER & HAMPTON LLP,<br><br>             Defendant. | No. 11-cv-05971 (CM) |
| DEVELOPMENT SPECIALISTS, INC., in its capacity as Plan Administrator for Coudert Brothers LLP,<br><br>             Plaintiff,<br><br>v.<br><br>DLA PIPER (US) LLP,<br><br>             Defendant. | No. 11-cv-05983 (CM) |

DEVELOPMENT SPECIALISTS, INC.,
in its capacity as Plan Administrator for
Coudert Brothers LLP,

                 Plaintiff,

v.

DECHERT LLP,

                 Defendant.

No. 11-cv-05984 (CM)

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF LAW FIRM DEFENDANTS' MOTION TO
<u>WITHDRAW REFERENCE AND FOR ABSTENTION</u>**

Dated: New York, New York
       September 21, 2011

## TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.      THE COURT SHOULD WITHDRAW THE REFERENCE ............................................. 2

        A.      The Bankruptcy Court Lacks Constitutional Authority to Determine the Actions ........................................................................................................ 2

        B.      The Motions Are Timely .................................................................................. 3

        C.      The Law Firm Defendants Did Not Consent ............................................. 4

                1.      Dechert, K&L Gates and Dorsey Did Not Consent Merely by Acknowledging Jurisdiction .................................................. 5

                2.      Duane Morris and Sheppard Mullin Did Not Consent Merely by Asking the Bankruptcy Court to Dismiss DSI's Complaints ................. 5

                3.      DSI Acknowledges that DLA Piper Did Not Consent ............................... 6

                4.      Dechert Did Not Consent by Filing a Proof of Claim ................................ 6

        D.      The Bankruptcy Court Has No Greater Familiarity with the Actions than this Court ............................................................................................... 7

        E.      The Law Firm Defendants Are Not Forum-Shopping ............................................. 8

II.     THE COURT SHOULD ABSTAIN OR IN THE ALTERNATIVE, REVIEW *DE NOVO* THE BANKRUPTCY COURT'S CONCLUSIONS OF LAW ON THE PROFITS CLAIMS ....................................................................................... 9

CONCLUSION ............................................................................................................... 10

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ................................................................................................ 3

*In re Bigler LP*,
    2011 Bankr. LEXIS 3205 (Bankr. S.D. Tex. Aug. 19, 2011) ............................... 3, 4

*In re CIS Corp.*,
    172 B.R. 748 (S.D.N.Y. 1994) ............................................................................... 2

*In re Coudert Brothers LLP Law Firm Adversary Proceedings*,
    No. 10 Civ. 9334 (VM) (S.D.N.Y. 2010) .............................................................. 9

*In re Donald Sheldon & Co., Inc.*,
    1992 U.S. Dist. LEXIS 19232 (S.D.N.Y. Dec. 11, 1992) ................................... 5, 6

*In re FMI Forwarding Co., Inc.*,
    2005 U.S. Dist. LEXIS 941 (S.D.N.Y. Jan. 21, 2005) ......................................... 4

*In re Joseph DelGreco & Co.*,
    No. 10 Civ. 6422, 2011 U.S. Dist. LEXIS 10972 (S.D.N.Y. Jan. 26, 2011) ........... 8

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993) ................................................................................. 2, 6

*In re Rickel & Assocs., Inc.*,
    2003 U.S. Dist. LEXIS 23136 (S.D.N.Y. Dec. 23, 2003) ..................................... 4

*In re Teleservices Group, Inc.*,
    2011 Bankr. LEXIS 3128 (Bankr. W.D. Mich. Aug. 17, 2011) ......................... 4, 7

*In re The VWE Group, Inc.*,
    359 B.R. 441 (S.D.N.Y. 2007) ............................................................................ 2, 6

*In re Tyson*,
    433 B.R. 68 (S.D.N.Y. 2010) ............................................................................... 5

*Men's Sportswear, Inc. v. Sasson Jeans, Inc.*,
    834 F.2d 1134 (2d Cir. 1987) ............................................................................... 5

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982) ............................................................................................... 3

*Roell v. Withrow*,
    538 U.S. 580 (2003) ............................................................................................. 5

*Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP*,
    Index No. 150178/2010 (Sup. Ct. N.Y. County Sept. 13, 2011) ................... 1, 2, 10

**Page**

*Stern v. Marshall*,
    564 U.S. ---, 131 S. Ct. 2594 (June 23, 2011) ............................................................... passim

**Statutes**

28 U.S.C. § 157 ................................................................................................. 3

28 U.S.C. § 157(b) ......................................................................................... 2, 3

28 U.S.C. § 157(b)(2)(C) ................................................................................. 2

28 U.S.C. § 157(c)(1) ....................................................................................... 2

28 U.S.C. § 157(c)(2) ....................................................................................... 4

28 U.S.C. § 157(e) ........................................................................................... 6

Bankruptcy Act of 1978 ................................................................................... 3

Bankruptcy Amendment Act of 1984 .............................................................. 3

## PRELIMINARY STATEMENT

DSI[1] does not dispute that its causes of action are exactly like the state law cause of action in *Stern v. Marshall*, 564 U.S. ---, 131 S. Ct. 2594 (June 23, 2011).  Under *Stern*, the Bankruptcy Court lacks authority to render a final determination, favoring withdrawal of the reference.  *See* Point I(A).

In light of *Stern*, DSI was willing to *consent* to withdrawal of the reference, if the Law Firm Defendants would waive their right to review of the Bankruptcy Court's ruling that the Profits Claims are cognizable under New York law.  Huene Decl. ¶ 8.  Despite its willingness to proceed in this Court if it could gain a concession thereby, DSI now argues that the Court should deny the motions to withdraw the reference.  *See* DSI's Memorandum of Law in Opposition to the Law Firm Defendants' Motion to Withdraw the Reference and for Abstention ("Opp. Mem.") 9-18.  DSI's arguments against withdrawal are meritless.  *See* Point I(B-E).

With respect to the Law Firm Defendants' motion for abstention, or in the alternative, for this Court to treat the Bankruptcy Court's ruling on DSI's Profit Claims as proposed conclusions of law, DSI argues that its Profits Claims "are neither novel nor unprecedented under New York law."  Opp. Mem. 3.  This argument is based on multiple mischaracterizations of law.  DSI's Profits Claims would result in a radical change of New York law and policy, and the Court should exercise its discretion to abstain in favor of a New York state court, or to convert the Bankruptcy Court's ruling on this dispositive issue of state law to proposed conclusions of law.  Indeed, on September 13, 2011, the New York Supreme Court, New York County, in the first New York decision to have addressed the issue, ruled that New York does *not* recognize "a cause of action for unfinished business for hourly fee cases."  *Sheresky v. Sheresky*

---

[1] All defined terms have the same meaning as in the Law Firm Defendants' opening brief.

*Aronson Mayefsky & Sloan, LLP*, Index No. 150178/2010 (Sup. Ct. N.Y. County Sept. 13, 2011) (Bransten, J.), at 12.[2]  *See* Point II.

## ARGUMENT

### I.

### THE COURT SHOULD WITHDRAW THE REFERENCE

**A.    The Bankruptcy Court Lacks Constitutional Authority to Determine the Actions**

DSI does not dispute that its causes of action are, as in *Stern*, state law causes of action, asserted to augment the estate, that would not necessarily be resolved in the course of ruling on a creditor's proof of claim.  131 S. Ct. at 2616-20.  Accordingly, under *Stern*, even if 28 U.S.C. § 157(b) gives the Bankruptcy Court statutory authority to determine such causes of action by designating them as "core" proceedings, the Bankruptcy Court lacks constitutional authority to finally determine them, and they must be treated as non-core proceedings in which the Bankruptcy Court may only render proposed findings of fact and conclusions of law pursuant to § 157(c)(1).[3] This is the most important factor in determining whether to withdraw the reference, and here it favors withdrawal.  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("questions of efficiency and uniformity" turn on whether a proceeding is non-core).

---

[2] A copy of the unpublished *Sheresky* decision is attached to the Supplemental Declaration of Claire L. Huene ("Supp. Huene Decl."), dated September 21, 2011, as Exhibit A.

[3] DSI asserts that *Stern* only applies to 28 U.S.C. § 157(b)(2)(C) (counterclaims by the estate), and purports not to "concede" that the Actions are non-core, on the grounds that they are "core" under other prongs of § 157(b).  Opp. Mem. 2; 14 n.13.  Under *Stern*, whether a cause of action is "core" under § 157(b) does not resolve whether the Bankruptcy Court may finally determine it without violating Article III.  Moreover, the *Stern* Court's reasoning applies to all categories of "core" proceedings under § 157(b), to the extent the underlying causes of action are common law claims that seek to augment the estate.  The fact that DSI styles its claims as "turnover" claims or for fraudulent conveyance is irrelevant.  *See, e.g., Stern*, 131 S. Ct. at 2614; *In re CIS Corp.*, 172 B.R. 748, 756 (S.D.N.Y. 1994).  DSI's unsupported contention that the Bankruptcy Court should decide whether the matters are core (Opp. Mem. 14 n.13) is also contrary to law.  *See In re The VWE Group, Inc.*, 359 B.R. 441, 447-48 (S.D.N.Y. 2007).

B.    **The Motions Are Timely**

The Law Firm Defendants moved to withdraw the reference promptly after *Stern* was decided.  Huene Decl. ¶¶ 4-9.  DSI argues that the motions are untimely because *Stern* "actually did very little," and merely "reaffirmed" the Supreme Court's decisions in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).  Opp. Mem. 2, 13.  DSI is wrong.

*Northern Pipeline* did not address 28 U.S.C. § 157 at all.  It addressed the Bankruptcy Act of 1978.  In response to *Northern Pipeline*, Congress passed the Bankruptcy Amendment Act of 1984 (the "1984 Act"), which replaced the prior bankruptcy structure with the current statute, including the definition of "core" proceedings in § 157.

In *Granfinanciera*, the Supreme Court considered whether a defendant against whom an estate asserted a fraudulent conveyance claim had a Seventh Amendment right to a jury trial.  492 U.S. at 36.  The Supreme Court held that a fraudulent conveyance claim was a "private" common law claim, akin to a claim for breach of contract, and therefore that the Seventh Amendment affords the right to a jury trial.  *Id.* at 55-56.  The Supreme Court expressly did *not* decide whether Bankruptcy Courts could conduct such jury trials, or whether "Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges."  *Id.* at 64.  The *Granfinanciera* Court left "those issues for future decisions."  *Id.*

It was not until *Stern* that the Supreme Court ruled on the issues left open by *Granfinanciera*, and held that § 157(b) violates Article III to the extent it authorizes Bankruptcy Courts to finally determine private state law causes of action such as DSI's by categorizing them as "core" proceedings.  Indeed, many Bankruptcy Courts disagree with DSI's assertion that *Stern* "did very little."  *See, e.g.*, *In re Bigler LP*, 2011 Bankr. LEXIS 3205, at *47 (Bankr. S.D. Tex.

Aug. 19, 2011) (calling *Stern* a "watershed opinion"); *In re Teleservices Group, Inc.*, 2011 Bankr. LEXIS 3128, at *6 (Bankr. W.D. Mich. Aug. 17, 2011) (calling *Stern* a "bombshell").[4]

       Because the Law Firm Defendants moved promptly after *Stern*, their motions are timely.

## C.   The Law Firm Defendants Did Not Consent

       As DSI acknowledges, because under *Stern* the Actions must be finally determined by an Article III court, the only way that the Bankruptcy Court could finally determine them is if the Law Firm Defendants consent.  28 U.S.C. § 157(c)(2).  Opp. Mem. 11-12.

       At no time did the Law Firm Defendants expressly consent to final determination by the Bankruptcy Court.  In their answers, *none* of the Law Firm Defendants agreed with DSI's allegation that the Actions were "core" and thus subject to final determination by the Bankruptcy Court.

       DSI's "consent" argument is based on *implied* consent, on the grounds that the Law Firm Defendants have participated in the Actions before the Bankruptcy Court to date.  However, the Actions remain in the pre-discovery stage.[5]  The only activity in the Actions has been the initial pleadings, the Law Firm Defendants' motions to dismiss and attempts to obtain interlocutory review of the Bankruptcy Court's conclusions of law in denying their motions to dismiss.  DSI's own authorities demonstrate that such limited activity is not sufficient to find implied consent to final determination by the Bankruptcy Court.  Opp. Mem. 14-15.  In each of the

---

[4] DSI's cases are inapposite.  *See, e.g.*, *In re FMI Forwarding Co., Inc.*, 2005 U.S. Dist. LEXIS 941, *3-4 (S.D.N.Y. Jan. 21, 2005); *In re Rickel & Assocs., Inc.*, 2003 U.S. Dist. LEXIS 23136, at *5 (S.D.N.Y. Dec. 23, 2003).  The timeliness of a motion to withdraw the reference depends on the facts.  Here, the Law Firm Defendants moved to withdraw the reference promptly after a significant new decision by the Supreme Court.

[5] DSI does not dispute that the parties have not even exchanged Rule 26 disclosures, and that there has been no formal document production or other discovery exchanged.

cases cited by DSI, implied consent was found because the defendants did not argue lack of consent *until after trial*. *See Roell v. Withrow*, 538 U.S. 580, 583 (2003); *In re Tyson*, 433 B.R. 68, 76 (S.D.N.Y. 2010); *Men's Sportswear, Inc. v. Sasson Jeans, Inc.*, 834 F.2d 1134, 1137 (2d Cir. 1987). Thus, there is no basis for finding that the Law Firm Defendants impliedly consented to final determination by the Bankruptcy Court given the early stage of the Actions, and their universal dispute of DSI's "core" allegation.

DSI also singles out some Law Firm Defendants specifically:

**1.     Dechert, K&L Gates and Dorsey Did Not
Consent Merely by Acknowledging Jurisdiction**

DSI argues that Dechert, K&L Gates and Dorsey impliedly consented to final determination by the Bankruptcy Court because they acknowledged "jurisdiction" in their answers. Opp. Mem. 14-15 & n.14. DSI cites no authority for this proposition. It is well-established that parties cannot consent to "jurisdiction." Moreover, "jurisdiction" is not equivalent to whether the Bankruptcy Court has the authority to make a final determination, as *Stern* makes clear. 131 S. Ct. at 2607 (whether a Bankruptcy Court may make a final determination is not a question of jurisdiction). In addition, each of those Law Firm Defendants disputed that the Actions were "core," and Dechert asserted a right to arbitration, demonstrating that it sought a final determination in a forum other than the Bankruptcy Court. *See* Declaration of David J. Adler dated Sept. 7, 2011 ("Adler Decl."), Ex. 15 ¶ 34.

**2.     Duane Morris and Sheppard Mullin Did Not Consent Merely
by Asking the Bankruptcy Court to Dismiss DSI's Complaints**

Similarly, it is not sufficient that Duane Morris's and Sheppard Mullin's answers contain standard language asking the Bankruptcy Court to enter judgment dismissing the Complaints. Opp. Mem. 15 n.14. The case cited by DSI, *In re Donald Sheldon & Co., Inc.*, 1992

U.S. Dist. LEXIS 19232, at *4 (S.D.N.Y. Dec. 11, 1992), is inapposite.  In *Donald Sheldon*, the Court denied the motion to withdraw the reference, brought *after an adverse jury verdict*, based on a prior "binding order" that the proceeding was core, so that consent was not required.  *Id.* at *5. The Court then noted, in dicta, that even if the proceeding were non-core, that defendants impliedly consented because they repeatedly sought judgment from the Bankruptcy Court, including after trial.  *Id.* at *6-7.  The *Donald Sheldon* facts are nothing like the facts in the Actions.  Both Duane Morris and Sheppard Mullin disputed that the Actions were "core," indicating that they were disputing the Bankruptcy Court's authority to enter a final determination.

### 3.     DSI Acknowledges that DLA Piper Did Not Consent

As all the Law Firm Defendants did, DLA Piper disputed DSI's allegation that the Action against it was "core."  In addition, as DSI acknowledges (Opp. Mem. 7), DLA Piper asserted a right to a jury trial.  Under 28 U.S.C. § 157(e), where there is a right to a jury trial, "express" consent is required for the Bankruptcy Court to hold the jury trial.  DSI's "implied" consent arguments are thus inapplicable to DLA Piper, and DSI does not claim that DLA Piper expressly consented (it did not do so).  This alone is sufficient to withdraw the reference in the DLA Piper Action.  *See VWE*, 359 B.R. at 451 ("Under *Orion,* the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference.").

### 4.     Dechert Did Not Consent by Filing a Proof of Claim

DSI argues that Dechert consented because it filed a proof of claim and asserted counterclaims.[6]  Opp. Mem. 14.  DSI ignores *Stern*.  In *Stern*, a creditor filed a proof of claim for defamation and consistently stated that he wanted to litigate that claim in the Bankruptcy Court. The Supreme Court held that the creditor thereby consented *only* to the Bankruptcy Court's

---

[6] None of the other Law Firm Defendants filed proofs of claim in the bankruptcy case.

determination of his defamation claim.  *Stern*, 131 S. Ct. at 2608.  This did *not* constitute consent

to the Bankruptcy Court's determination of the estate's counterclaim for tortious interference,

which would not "necessarily" be resolved in the course of the Bankruptcy Court's ruling on the

creditor's proof of claim for defamation.  *Id.* at 2617-18.  The Supreme Court noted that filing a

proof of claim is "not truly" consent, because a creditor has "nowhere else to go" to recover from

the estate.  *Id.* at 2614.

DSI does not argue that its Action against Dechert would "necessarily" be resolved

by a ruling on Dechert's proof of claim, as required by *Stern*.  Dechert's proof of claim is based on

its asset purchase agreement with Coudert relating to the Paris office of Coudert Freres.  *See* Adler

Decl., Ex. 20 ¶¶ 1, 4.  DSI's Profits Claims against Dechert are based on the former Coudert office

in Brussels and have nothing to do with the Paris asset purchase.

Moreover, DSI ignores that Dechert asserted a contractual right to arbitrate[7] both

DSI's Profits Claims and its fraudulent conveyance claims.  *See* Adler Decl. Ex. 20, ¶ 5.  Thus,

Dechert *expressly* reserved the right to final determination in a forum other than the Bankruptcy

Court with respect to *all* of DSI's claims.[8]

**D.     The Bankruptcy Court Has No Greater Familiarity with the Actions than this Court**

DSI claims that withdrawal of the reference would result in inefficiency because

the Bankruptcy Court has had "extensive involvement" and is "intimately familiar" with the

---

[7] In their opening brief, the Law Firm Defendants stated that "most" of the Law Firm Defendants asserted either a right to arbitrate or a right to a jury trial.  This was an error: DLA Piper asserted a right to a jury trial, and Dechert asserted a right to arbitrate.

[8] Even if the Court finds that any Law Firm Defendant consented, such consent was prior to the ruling in *Stern* and cannot constitute knowing consent or waiver.  *See In re Teleservices Group*, 2011 Bankr. LEXIS 3128, at *62 (finding that in light of *Stern* the party "clearly has not given its consent *when that consent is now recognized for what it must be* – a knowing waiver of [the party's] right to have an Article III judge . . . make the final decision") (emphasis added).

Actions.  Opp. Mem. 17-19.  These assertions are baseless.  The Bankruptcy Court's involvement

in these Actions has been limited to its denial of the Law Firm Defendants' motions to dismiss and

subsequent motions for leave to appeal to the Second Circuit.  The Bankruptcy Court's denial of

the motions to dismiss addressed a pure issue of law: whether or not the Profits Claims, which

seek to recover post-dissolution profits on former Coudert hourly-rate cases, are cognizable under

New York law.  The Bankruptcy Court thus has no special "familiarity" with the Actions such that

the Court should deny the motions to withdraw the reference.  *See In re Joseph DelGreco & Co.*,

No. 10 Civ. 6422, 2011 U.S. Dist. LEXIS 10972, at *13 (S.D.N.Y. Jan. 26, 2011).[9]

**E.**     **The Law Firm Defendants Are Not Forum-Shopping**

DSI claims that the Law Firm Defendants are forum-shopping because they sought

interlocutory review of the Bankruptcy Court's decision on DSI's Profits Claims.  Opp. Mem. 17.

The Law Firm Defendants should not be penalized for seeking review of the decision.  Notably,

the Law Firm Defendants did *not* move to withdraw the reference following the Bankruptcy

Court's 2009 denial of their motions to dismiss.  Instead, they moved to withdraw based on *Stern*

given the significant impact *Stern* has on the Bankruptcy Court's authority to issue final decisions.

The Law Firm Defendants are not prescient: it was not part of a forum-shopping design that they

would await the *Stern* decision and then seek to withdraw the reference.  Moreover, DSI's

assertions of forum-shopping are wholly undermined by its willingness to agree to withdrawal of

the reference after *Stern*.  The only reason these motions were not on consent is that DSI

unreasonably requested that the Law Firm Defendants waive their right to review of the

Bankruptcy Court's conclusions of law on the Profits Claims.

_____

[9] DSI's "uniformity" argument is based on its assertion that its action against Orrick remains in the
Bankruptcy Court.  Opp. Mem. 17.  However, Orrick has since moved to withdraw the reference.

## II.

## THE COURT SHOULD ABSTAIN OR IN THE ALTERNATIVE, REVIEW *DE NOVO* THE BANKRUPTCY COURT'S CONCLUSIONS OF LAW ON THE PROFITS CLAIMS

DSI opposes abstention or review by this Court of the Bankruptcy Court's conclusions of law on the grounds that the Profits Claims are not "novel" or "unprecedented" under New York law.  Opp. Br. 3.  DSI misrepresents the issues and the law.

DSI claims that New York has "long recognized the unfinished business doctrine." Opp. Mem. 3.  That is not the issue.  The issue is whether DSI can use the so-called "doctrine" to reach *post-dissolution* profits on former Coudert *hourly-rate* cases.  Every New York decision on which DSI relies involved *contingency* matters pending at the time of dissolution, for which the dissolved law firm has not been paid for its *pre-dissolution* work.[10]  Those cases hold that the dissolved firm is *not* entitled to recover for *post-dissolution* work of its former partners at their new firms.  Judge Marrero and Judge Drain both found that DSI's attempts to reach post-dissolution profits on hourly-rate matters are novel.  *See* Huene Decl. Ex. C at 34-35 ("this would be a case for certification to the New York Court of Appeals."); *In re Coudert Brothers LLP Law Firm Adversary Proceedings*, No. 10 Civ. 9334 (VM) (S.D.N.Y. 2010), Docket Entry No. 33, at 6, 11 ("the application of the unfinished business doctrine to hourly fee matters is a matter of first impression in New York").

A decision that post-dissolution profits on hourly-rate matters must be turned over to the defunct law firm (or else the client must choose a new attorney) would be a radical change

---

[10] Having no New York authority to support its Profits Claims, DSI claimed that "[o]ther jurisdictions have *uniformly applied the unfinished business doctrine to hourly rate cases*."  Opp. Mem. 7 n.6 (emphasis added).  However, the majority of the non-New York cases cited by DSI for this proposition actually involved contingency fee matters, *not* hourly-rate matters.  By letter to the Court dated September 20, 2011, DSI's counsel admitted that the only cases cited by DSI that actually involve hourly-rate matters are two unreviewed Bankruptcy Court decisions and decisions from the District of Columbia.

in New York law, which holds that clients and matters are not property of a law firm and that attempts to restrict the movement of lawyers and clients impermissibly burdens the attorney-client relationship and the right of clients to counsel of their choosing.

      The New York Supreme Court addressed the distinction between contingency fee matters and hourly-rate matters pending at the time of a law firm's dissolution for the first time in *Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP*, Index No. 150178/2010 (Sup. Ct. N.Y. County Sept. 13, 2011).  Supp. Huene Decl. Ex. A.  The plaintiff in *Sheresky* argued, based on the Bankruptcy Court's and Judge Marrero's decisions in these Actions, that New York law would recognize "unfinished business" claims for hourly-rate matters.  *Id.* at 10.  The *Sheresky* Court disagreed, finding that "[i]t is logical to distinguish between contingency fee arrangements and cases which are billed on the basis of hourly work."  *Id.* at 11.  The Court dismissed the claims, being "not inclined to recognize a cause of action for unfinished business for hourly fee cases which has, hitherto, not been recognized by the New York courts."  *Id.* at 12.

      For all these reasons, DSI's Profits Claims are novel, unprecedented, and implicate New York law and policy on the attorney-client relationship.  The Court should exercise its discretion to abstain, or, in the alternative, treat the Bankruptcy Court's decision on this novel and dispositive issue of state law as proposed conclusions of law and rule on it *de novo*.

## <u>CONCLUSION</u>

      For the foregoing reasons, the Court should grant the Law Firm Defendants' motions to withdraw the reference to the Bankruptcy Court, and either abstain, or convert the Bankruptcy Court's conclusions of law to proposed conclusions and review them *de novo*.

Dated: New York, New York
　　　  September 21, 2011

　　　　　　　　　　　　　MILLER & WRUBEL P.C.

　　　　　　　　　　　　　By: /s/ Claire L. Huene
　　　　　　　　　　　　　　　  Joel M. Miller
　　　　　　　　　　　　　　　  Claire L. Huene
　　　　　　　　　　　　　　　  570 Lexington Avenue
　　　　　　　　　　　　　　　  New York, New York 10022
　　　　　　　　　　　　　　　  Tel:  (212) 336-3500
　　　　　　　　　　　　　　　  Fax:  (212) 336-3555

　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　*Dechert LLP*


　　　　　　　　　　　　　MORRISON & FOERSTER LLP

　　　　　　　　　　　　　By: /s/  Brett H. Miller
　　　　　　　　　　　　　　　  Brett H. Miller
　　　　　　　　　　　　　　　  Erica J. Richards
　　　　　　　　　　　　　　　  1290 Avenue of the Americas
　　　　　　　　　　　　　　　  New York, New York 10104
　　　　　　　　　　　　　　　  Tel:  (212) 468-8000
　　　　　　　　　　　　　　　  Fax:  (212) 468-7900

　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　*Morrison & Foerster LLP*

QUINN EMANUEL URQUHART &
SULLIVAN LLP

By:  /s/  Eric M. Kay
     Eric J. Emanuel
     Susheel Kirpalani
     Eric M. Kay
     51 Madison Avenue, 22nd Floor
     New York, New York 10010
     Tel: (212) 849-7000
     Fax: (212) 849-7100

*Attorneys for Defendant*
*Akin Gump Strauss Hauer &Feld LLP*


DUANE MORRIS LLP
A Delaware Limited Liability Partnership

By:  /s/ Lawrence J. Kotler
     Lawrence J. Kotler
     1540 Broadway
     New York, NY 10036-4086
     Tel:  (212) 692-1000
     Fax:  (212) 692-1020

     Lewis R. Olshin, Esquire
     Lauren Lonergan Taylor, Esquire
     30 South 17th Street
     Philadelphia, PA  19103
     Tel:  (215) 979-1000
     Fax:  (215) 979-1020

*Attorneys for Defendant*
*Duane Morris LLP*

K&L GATES LLP

By: /s/ Jeffrey N. Rich
       Jeffrey N. Rich
       599 Lexington Avenue
       New York, New York 10022
       Tel:  (212) 536-4097
       Fax:  (212) 536-3091

*Attorneys for Defendant*
*K&L Gates LLP*


KRAMON & GRAHAM, P.A.

By: /s/  James P. Ulwick
       James P. Ulwick (*admitted pro hac vice*)
       One South Street, Suite 2600
       Baltimore, Maryland 21202
       Tel: (410) 752-6030

          - and -

MEISTER SEELIG & FEIN LLP

       Jeffrey Schreiber
       Howard Davis
       140 East 45th Street, 19th Floor
       New York, New York 10017
       Tel: (212) 655-2500
       Fax: (212) 655-3535

*Attorneys for Defendant*
*DLA Piper (US) LLP*

13

ARENT FOX LLP

By: /s/ Allen G. Reiter
    George Angelich
    Allen G. Reiter
    1675 Broadway
    New York, New York 10019
    Tel:  (212) 484-3900

*Attorneys for Defendant Arent Fox LLP*


SHEPPARD MULLIN RICHTER
  & HAMPTON LLP

By: /s/  Malani J. Cademartori
    Malani J. Cademartori
    Daniel L. Brown
    30 Rockefeller Plaza
    New York, New York 10112
    Tel: (212) 653-8700
    Fax: (212) 653-8701

    D. Ronald Ryland, Cal. Bar No. 49749
      (*admitted pro hac vice*)
    Four Embarcadero Center, 17th Floor
    San Francisco, CA 94111
    Tel: (415) 434-9100
    Fax: (415) 434-3947

*Attorneys for Defendant*
*Sheppard Mullin Richter & Hampton LLP*


DORSEY & WHITNEY LLP

By: /s/ Jessica D. Mikhailevich
    Jessica D. Mikhailevich
    250 Park Avenue
    New York, NY  10177
    Tel:  (212) 415-9200
    Fax:  (212) 953-7201

*Attorneys for Defendant Dorsey & Whitney LLP*

JONES DAY

By:  /s/ Steven C. Bennett
     222 East 41st Street
     New York, New York 10017
     Tel: (212) 326-3939
     Fax: (212) 755-7306

     Geoffrey S. Stewart
     51 Louisiana Avenue, N.W.
     Washington, D.C. 20001
     Tel: (202) 879-3939
     Fax: (202) 626-1700

*Attorneys for Defendant Jones Day*


## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September 2011, I caused the forgoing

Reply Brief in Further Support of Law Firm Defendants' Motion to Withdraw Reference and for

Abstention to be served by hand on counsel for Development Specialists, Inc.

Dated:  New York, New York
        September 21, 2011


                              /s/ Claire L. Huene
                                 Claire L. Huene

15